

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00301-CV

IN THE INTEREST OF A.S. AND
D.S., CHILDREN

----------

FROM COUNTY COURT AT LAW NO. 1 OF PARKER COUNTY
TRIAL COURT NO. CIV-12-0992

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In four issues, appellant Mother appeals the denial of her plea to the jurisdiction, arguing that the trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), erred by

---

[1]*See* Tex. R. App. P. 47.4.

overruling her plea to the jurisdiction without taking evidence, and abused its discretion by ordering a geographical restriction for the children and denying her motion for new trial. We affirm.

## II. Factual and Procedural Background

Mother and appellee Father are the parents of A.L.S. and D.P.S.[2] A.L.S. was three years old and D.P.S. was a little over a year old when Father filed for divorce.

The parties met in Texas in August 2008. During their subsequent common law marriage, Father worked a four-weeks-out-of-town/two-weeks-in-town schedule on an offshore oil rig. After A.L.S. was born in October 2009, Mother became a stay-at-home mother.

Mother said that because of Father's offshore work schedule, when she became pregnant with A.L.S., she started traveling back and forth to Arizona to see her mother. She increased her travel to Arizona after A.L.S. was born because she needed help with the newborn. Mother said that during A.L.S.'s first year, she was in Arizona most of the time that Father was on a rig and would get home a day or two before he did. When D.P.S. was born in September 2011, Mother continued this pattern and said that Father did not object because it did not affect his time with the children.

---

[2]To protect the privacy of the parties and children involved in this appeal, we identify the parties as "Mother" and "Father" and the children by their initials. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014).

Father said that the parties' relationship deteriorated in the summer of 2012 when he resisted Mother's idea of moving their family to Arizona because her mother was having financial problems. But Mother said that their problems began in March 2012 when they started arguing about financial matters. Mother said that the travel arrangement stopped working in September 2012 before Father left to go offshore, when he told her that he had decided to cancel her car insurance and stop paying for everything, and he took all of the money out of their bank account. Mother said that because of the lack of income, at that point, she decided to move in with her mother in Arizona. Mother did not tell Father she was moving to Arizona, and it took him months to track her down, ultimately by using a U-Haul receipt that recited her mother's address in Arizona.

Father filed for divorce on November 2, 2012, and the trial court determined that it had jurisdiction despite Mother's plea to the jurisdiction. For approximately two years, under the trial court's temporary orders, Father worked a two-weeks-on/two-weeks-off schedule so that he and Mother could fly the children between Texas and Arizona and split 50/50 the time each parent had with the children. Both parents testified about the children's ties to family members in Texas and Arizona and the lives that they led in those locations.

At the conclusion of the trial, the trial court imposed a geographical restriction on the children's residence to Parker County and counties contiguous to Parker County. The trial court denied Mother's subsequent motion for new trial, and this appeal followed.

### III. Jurisdiction

In her first and second issues and part of her fourth issue, Mother complains that the trial court had no jurisdiction over the child custody determination, that it erred by overruling her plea to the jurisdiction without taking evidence to make a determination under the UCCJEA, and that it thereby abused its discretion by denying her motion for new trial.[3]

Subject matter jurisdiction in child custody matters is determined by reference to the UCCJEA, and the four items listed in family code section 152.201(a) set out the exclusive jurisdictional grounds under which a Texas court may make a child custody determination. Tex. Fam. Code Ann. § 152.201(a), (b) (West 2014); *B.Q.S.*, 2014 WL 2957451, at *3 (citing *In re Dean*, 393 S.W.3d 741, 746 (Tex. 2012)). Subject matter jurisdiction is never presumed and cannot be waived. *Arnold v. Price*, 365 S.W.3d 455, 459 (Tex. App.—Fort Worth 2011, no pet.). We review questions of subject matter jurisdiction de novo. *See Powell v. Stover*, 165 S.W.3d 322, 324–25 (Tex. 2005) (orig. proceeding); *Arnold*, 365 S.W.3d at 459 ("When an action is grounded in statute, subject matter jurisdiction must be shown under the applicable statute.").

---

[3]Father points out that Mother did not file a special appearance in the trial court, but special appearances pertain to personal jurisdiction, not subject matter jurisdiction. *See* Tex. R. Civ. P. 120a; *In re B.Q.S.*, No. 11-13-00043-CV, 2014 WL 2957451, at *2–3 (Tex. App.—Eastland June 26, 2014, no pet.) (mem. op.).

Section 152.201(a) provides:

(a) Except as otherwise provided in Section 152.204, a court of this state has jurisdiction to make an initial child custody determination only if:

  (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

  (2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

    (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

    (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

  (3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

  (4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

Tex. Fam. Code Ann. § 152.201(a).  The UCCJEA defines "home state" as

the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding . . . .  A period of

5

> temporary absence of a parent or person acting as a parent is part of the period.

*Id.* § 152.102(7).

The date of the child custody proceeding's commencement is used as the point of reference from which to determine the child's home state. *In re Brown*, 203 S.W.3d 888, 891 (Tex. App.—Fort Worth 2006, orig. proceeding). A proceeding's commencement is "the filing of the first pleading," Tex. Fam. Code Ann. § 152.102(5), i.e., the date that Father filed suit in Texas. *See In re Walker*, 428 S.W.3d 212, 219 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). And the "[p]hysical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination." Tex. Fam. Code Ann. § 152.201(c). Rather, the child's physical location is the central factor to be considered when determining the home state. *Powell*, 165 S.W.3d at 326; *Walker*, 428 S.W.3d at 216; *see also Brown*, 203 S.W.3d at 891–92 ("In determining home-state jurisdiction, the Texas Supreme Court has adopted a 'physical presence' test that focuses exclusively on the child's physical location for the six month period preceding the filing of a petition requiring an initial child-custody determination."). Neither a "start to move" nor visitations within a state suffice to determine whether a state has become a child's "home state" under section 152.102(7). *In re Marriage of Marsalis*, 338 S.W.3d 131, 136 (Tex. App.—Texarkana 2011, no pet.).

6

Father filed his original petition on November 2, 2012, but he made no allegations and provided no information regarding where and with whom the children had lived for the preceding six months, despite acknowledging that Mother was a nonresident of Texas and listing her Arizona address.[4]

In her original answer and plea to the jurisdiction, Mother responded first with an unverified allegation that the children had resided primarily in Arizona with her for the six months preceding Father's filing of the action; she verified this allegation in her first amended answer and plea to the jurisdiction. But, like Father, she also did not state any further information about where the children had lived.

If a question of the existence or exercise of jurisdiction under the UCCJEA is raised in a child custody proceeding, the question, upon request of a party, must be given priority on the calendar and handled expeditiously. Tex. Fam.

___

[4]Mother contends that Father failed to allege facts in his petition that satisfy section 152.209, which provides that unless each party resides in Texas, in a child custody proceeding, each party (unless there a health or safety issue implicated by disclosure), in its first pleading or in an attached affidavit "shall give information, *if reasonably ascertainable*, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period." Tex. Fam. Code Ann. § 152.209(a) (West 2014) (emphasis added). But the failure to comply with section 152.209 is not jurisdictional—if it were, a parent would be required to provide information beyond that which is merely "reasonably ascertainable." *In re J.C.M.*, No. 09-13-00349-CV, 2014 WL 2152100, at *2 (Tex. App.—Beaumont May 22, 2014, no pet.) (mem. op.); *In re G.M.*, No. 04-13-00689-CV, 2014 WL 1242662, at *5 (Tex. App.—San Antonio Mar. 26, 2014, no pet.) (mem. op.) ("[B]ecause section 152.209 is not jurisdictional, we hold the Department's failure to reattach the affidavit to its first amended petition did not deprive the trial court of jurisdiction.").

Code Ann. § 152.107. Although Mother objected to the trial court's subject matter jurisdiction under the UCCJEA in her original and first amended answer and plea to the jurisdiction, the record does not reflect that she ever requested a hearing on her plea to the jurisdiction.[5] Mother also did not file a competing child custody proceeding in an Arizona court or raise the issue of Texas as an inconvenient forum. *Cf. id.* § 152.207(a) (stating that the issue of inconvenient forum may be raised upon motion of a party, sua sponte by the court, or by the request of another court).

The evidence at trial reflects that while Mother and the children had frequently visited Arizona, *see id.* § 152.102(7) (stating that a period of temporary absence of a parent is part of the six-consecutive-month period), Mother did not move from Texas to live permanently in Arizona until September 2012, only two months—not six months—before Father filed his original petition. *See In re A.S.C.H.*, 380 S.W.3d 346, 350 (Tex. App.—Dallas 2012, no pet.) (stating that

---

[5]At the November 29, 2012 hearing on Father's request for a temporary restraining order, the trial court stated, "I have conferenced with both attorneys for about 25 minutes. They went over some of the facts of the case with me. I'm going to rule that the court does have jurisdiction over the case." Neither party objected to this determination or moved to put evidence on the record. Mother also did not file a petition for writ of mandamus in this court to complain about the trial court's jurisdictional determination. *Cf. Brown*, 203 S.W.3d at 889 (stating that the primary issue in the original proceeding was whether under the UCCJEA, Texas was the children's "home state," determining that it was not, and granting relief). If, contrary to our conclusion below, the trial court had been incorrect in its ruling, either of the above options could have been used to expedite the jurisdictional question and conserve judicial resources.

8

when jurisdictional facts are challenged, the court may consider relevant evidence to resolve the jurisdictional issues).

Therefore, the trial court did not err by concluding that it had subject matter jurisdiction over the child custody proceeding or abuse its discretion by denying Mother's motion for new trial on this basis. The trial court could have found that while the children were living in Arizona at the time that Father filed his petition in Texas, they had only been living there for two months—not six consecutive months—and that prior to Mother's move in September 2012, the children (like Mother) had just been visiting Arizona but had also not lived six consecutive months in Texas before Father filed his petition. *See In re Tieri*, 283 S.W.3d 889, 894 (Tex. App.—Tyler 2008, orig. proceeding). *Compare* Tex. Fam. Code Ann. § 152.201(a)(1), *with id.* § 152.201(a)(4). Accordingly, the children had no "home state," allowing the trial court to exercise jurisdiction under the default provision in subsection (4).[6] *See Marsalis*, 338 S.W.3d at 136 (observing that the facts showed that although Louisiana was not the children's home state, neither was Texas). And the harm, if any, from the trial court's decision not to sua sponte set and hold a formal pretrial hearing on jurisdiction was cured by the admission of sufficient evidence during trial to determine jurisdiction under the UCCJEA.

---

[6]The trial court could not have made the jurisdictional determination under section 152.201(a)(2) because the record does not reflect substantial evidence concerning the children's care, protection, training, and personal relationships in Texas. *See Marsalis*, 338 S.W.3d at 137. And assuming subsection (3) might otherwise apply, Mother did not file a competing child custody proceeding in Arizona.

9

Therefore, we overrule Mother's first and second issues and the portion of her fourth issue pertaining to the denial of her motion for new trial on the jurisdictional argument.

## IV. Geographical Restriction

In her third issue and the remainder of her fourth issue, Mother argues that the trial court abused its discretion by ordering a geographical restriction for the children and by denying her motion for new trial on this basis. *See, e.g.*, *In re A.P.*, No. 02-15-00176-CV, 2015 WL 7304051, at *8 (Tex. App.—Fort Worth Nov. 19, 2015, no pet.) (mem. op.) ("Appellate courts review a trial court's decision denying a motion for new trial for an abuse of discretion."); *Newell v. Newell*, 349 S.W.3d 717, 720 (Tex. App.—Fort Worth 2011, no pet.) ("We review the trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion.").

## A. Standard of Review and Applicable Law

A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co.*

*v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g). "We must be cognizant that the trial court is in a better position to decide custody cases because 'it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent.'" *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (quoting *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied)).

Texas does not have any specific statute regarding residency restrictions in custody cases. *Id.* at 850. Texas public policy, in matters concerning conservatorship, possession, and access, is to:

(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

(2) provide a safe, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

Tex. Fam. Code Ann. § 153.001(a)(1)–(3) (West 2014). The family code further provides that in determining conservatorship, possession, and access issues, the court's primary consideration must always be the best interest of the child. *Id.*

11

§ 153.002 (West 2014). Family code section 153.134(b) states, as pertinent here, that in rendering an order appointing joint managing conservators, the court shall establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence. *Id.* § 153.134(b)(1)(A) (West 2014).[7]

While there are no formulaic, bright-line tests in geographic restriction cases, some factors that may assist courts in giving meaning to the best-interest standard in the relocation context include (1) the reasons for and against the move; (2) the effect on extended family relationships; (3) the effect on visitation and communication with the noncustodial parent to maintain a full and continuous relationship with the child; (4) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the noncustodial parent and the child; (5) the nature of the child's existing contact with both parents and the child's age, community ties, and health and educational needs, *see M.M.M.*, 307 S.W.3d at 850 (citing *Lenz v. Lenz*, 79 S.W.3d 10, 15–16, 19 (Tex. 2002)), in addition to (6) whether there is a good-faith reason to request or

---

[7]Specifically, in rendering an order appointing joint managing conservators, the court shall: (1) designate the conservator who has the exclusive right to determine the primary residence of the child and: (A) establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence; or (B) specify that the conservator may determine the child's primary residence without regard to geographic location. Tex. Fam. Code Ann. § 153.134(b)(1). As noted below, the trial court did not designate which of the parents would have the exclusive right to determine the children's primary residence, but neither party complains that this was error.

oppose the move; (7) the noncustodial parent's ability to relocate; (8) the degree of economic, emotional, and educational enhancement for the children and custodial parent; and (9) the need for continuity and stability in custody arrangements. *Lenz*, 79 S.W.3d at 15–16. Further, to the extent applicable, the best-interest factors from *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976),[8] may also be considered in the overall best-interest analysis. *In re A.C.S.*, 157 S.W.3d 9, 24 (Tex. App.—Waco 2004, no pet.).

## B. Evidence

Father testified that during the case's pendency, he worked a two-weeks-on/two-weeks-off schedule and planned to continue to do so for the foreseeable future. Under the temporary orders, he would come home from Louisiana on Saturday night, schedule a flight for Monday because that was the best day for Mother to have a flight scheduled, fly to Arizona, meet the children at the airport, and fly with the children back to Texas the following morning. After two weeks, Mother would fly to Texas and meet at a specified location for the children to return to Arizona with her. Father said that the children were a little irritated

---

[8]The *Holley* factors, which apply in determining best interest in custody, conservatorship, and termination-of-parental-rights cases are: the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals; the stability of the home; the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the acts or omissions of the parent. 544 S.W.2d at 371–72.

when they had to leave Texas to rejoin Mother and were sometimes rebellious about it. He opined that the Texas-Arizona commute could not continue to work indefinitely because A.L.S. would be starting school soon and because one of the parents would then be shortchanged of his or her ability to spend equal quality time with the children.

Father testified that when the children were with him, they had their own bedroom in the house that he rented, and they interacted with his parents, his brother, his brother's fiancée, and their infant son, and the neighborhood kids. He testified that the children's primary residence should be in Texas because of the support system and family that they had in Texas. He also stated that he would have to continue to work and with school starting, if the children stayed in Arizona, it would be "next to impossible" for him to be a father in their life and help raise them. He said that Mother could get a job in Texas and use his support system.

Mother testified that she paid half of the expenses of living with her mother and that she worked at night as a server and bartender at a Mexican restaurant while her mother babysat the children. She lived in her mother's four-bedroom house with her mother, her twelve-year-old sister, and the children. One of Mother's brothers and her other sister also lived in Arizona; her brother visited with the children every other weekend and her other sister came over two or three times a week. Mother has no family in Texas, and her mother was not willing to move to Texas.

14

Mother stated that when it was time for the children to go to Father, they acted the same way with her as he said they acted with him—"[T]hey have fun where they're at. They don't want to go, no matter -- it's a normal, typical kid thing. But, you know, once they get there, they're excited. So once they come, they get on the plane, they're excited to go back home."

The children had pets in Arizona, and they and Mother usually went to church two days a week. The children also liked going to the dog park. Mother had found a preschool for A.L.S. that was less than a mile from the house in Arizona and said that A.L.S. was excited about going there. She said that, beyond preschool, there was a good school within a five-minute walk from the house in Arizona. Mother said that every Tuesday was their family night at one of the malls—she and the children would do a little shopping, ride the carousel, and then go to the dollar movie theater. They enjoyed watching movies, coloring, and painting at home.

Mother said that Father would have the opportunity to maintain his relationship with the children if they remained in Arizona and that, based on what he had already spent on travel expenses, to do so would not work a great financial burden on him but she would be willing to help with some of those expenses.

Mother said that if she had to move back to Texas, she would not be able to make enough money to take the children back to Arizona to visit her family. She claimed that she would have to work two jobs in Texas to make up the

financial difference in living expenses, that she would have to pay for childcare in Texas, and that working more hours would prevent her from spending time with the children. However, during cross-examination, Mother agreed that if Father paid for her to get her patient care technician license, this would allow her to get a better-paying job and allow her to work a "normal" 8–5 schedule, and that if Father paid for day care, that would also ease the financial burden of relocating back to Texas.[9] She also acknowledged that the schools in Weatherford were not bad and that most of the items she had listed—movie theaters, carousels, preschools—existed in Texas.

Father's counsel asked Mother, "You do understand that you get to live in Arizona with your kids, you're going to be drastically diminishing the amount of time they get to see their father?" Mother replied, "At parts, yes." He then asked her, "And that's truly what you believe is in their best interest?" Mother replied, "Not taking away the kids, no. But not making it hard on life for them," adding, if life was hard on her, "it goes back to the kids."

In the June 16, 2014 divorce decree, the trial court set out that the parties would have "equal possession of the children, two weeks on and two weeks off,

[9]Mother was nonetheless resistant to the idea of relocating, stating, "I'd be coming back to nothing here. . . . I don't have anything." Mother did not like the idea of Father's family providing childcare because it would be stressful to her, which she said the children would pick up on, but she acknowledged that his family had been kind to her in front of the children "for the most part." Mother also acknowledged that she could get along with some of Father's family and that some of his family had been helpful or welcoming to her, but she also said that she did not get along with Father's mother.

representing a 50/50 division of possession." The trial court ordered Father to pay to Mother monthly child support of $1,216.73. The trial court also ordered Father to continue to maintain the children's health insurance. And the trial court ordered Father to "pay the cost of day care as necessary" and to "pay the cost of [Mother] obtaining her license as a Patient Care Technician."

## C. Analysis

Mother contends that the trial court abused its discretion by not fully weighing the evidence presented during trial, and she lists several difficulties with regard to the geographic restriction. The first is that while Father could travel to Arizona every two weeks for visitation, his work schedule would require her "to be available to care for the [c]hildren for at least two weeks every month," which would require her to relocate to Texas. Regarding a forced relocation to Texas, Mother predicted and complained of the following consequences: that it would cost her the financial support of her family, her job, and her family's free babysitting and require her to maintain a residence in Texas large enough to have the children for half of each month without any working family members to help defray the expense; that she would make substantially less money at a less flexible job; that she would have to work more hours or more than one job in Texas to make up the income difference and to therefore leave the children in day- and evening-care; that her housing situation in Texas would not be as good as the one in Arizona because of the income differential; that between childcare and working more hours, she would have "few opportunities to get back on track"

17

with her career; and that she would be forced "to deal with the stress of being a single mother and working long hours without the support of her family or friends in Arizona."[10]

Mother cites *A.C.S.* to support her argument that the trial court should "generally try to maximize 'quality of life for both the child and the custodial parent assessing whether a change is positive and in the child's best interest.'" But, as pointed out by Father, unlike the cases referenced by Mother and the factors that support her argument as a custodial parent, Mother is not *the* custodial parent, because the trial court did not designate one.[11] Rather, Mother is *a* custodial parent, while Father is the other one.

Further, the court in *A.C.S.* says nothing about "maximizing" the parent's quality of life; instead, it quotes the following:

---

[10]Mother does not appear to dispute that the trial court had sufficient evidence upon which to exercise its discretion. *Cf. M.M.M.*, 307 S.W.3d at 849 (stating that in an abuse of discretion review of a child custody ruling, legal and factual sufficiency of the evidence determines whether the trial court had sufficient information upon which to exercise its discretion, followed by a determination, based on the elicited evidence, of whether the trial court made a reasonable decision).

[11]Under section 153.134(b), in rendering an order appointing joint managing conservators, the trial court shall also "designate the conservator who has the exclusive right to determine the primary residence of the child," with the option—if no geographic restriction is ordered—to specify that the conservator may determine the child's primary residence without regard to geographic location. Tex. Fam. Code Ann. § 153.134(b)(1). The trial court appointed both parties joint managing conservators and ordered that the children's primary residence be in Parker County or counties contiguous to Parker County. Neither party argues that the trial court erred by not designating one of them as the conservator with the exclusive right to determine the child's primary residence.

18

A child's best interest cannot be determined in a vacuum. Although consideration of the visitation rights of the noncustodial parent is important, we must primarily concentrate on the general quality of life for both the child and the custodial parent in assessing whether a change is positive and in the child's best interest.

*A.C.S.*, 157 S.W.3d at 24–25. (quoting *Echols v. Olivarez*, 85 S.W.3d 475, 482 (Tex. App.—Austin 2002, no pet.)). While a child's best interest is "closely intertwined with the well-being of the custodial parent," the child's best interest trumps that of either parent. *Lenz*, 79 S.W.3d at 18. The *A.C.S.* court reversed the imposition of a geographical restriction based, at least in part, on the proposed relocation's costing the custodial parent her job, her rent-free home, and her social support network. 157 S.W.3d at 24–26. The *A.C.S.* court also considered that while a relocation to Texas would arguably improve the children's relationship with their father and his extended family, it would diminish the children's relationship with their mother's family and there was no clear indication in the record in that case that the mother would be able to "easily" locate suitable employment or housing in Texas, placing the children in a position of uncertainty for an unknown period of time. *Id.*

In contrast to *A.C.S.*, based on the trial testimony, and as reflected by the orders in the divorce decree, the trial court here could have concluded that none of Mother's complaints were sufficient to require Father or the children to continuously travel back and forth between Arizona and Texas, or to deprive the children and Father, as one of the children's custodial parents, of his ability to participate in the children's lives. Therefore, we cannot say, on this record, that

19

the trial court abused its discretion by adding the geographical restriction or by denying Mother's motion for new trial on that basis. We overrule Mother's third issue and the remainder of her fourth issue.

## V. Conclusion

Having overruled all of Mother's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  MEIER, GABRIEL, and SUDDERTH, JJ.

DELIVERED:  April 14, 2016