

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00030-CV
_____


IN THE MATTER OF THE MARRIAGE OF
CANDICE RAE MARSALIS AND JAMES FRANK MARSALIS
AND IN THE INTEREST OF W.D.M., S.P.M., J.E.M.,
J.J.M., J.L.M., AND M.R.M., CHILDREN


On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2009-290


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Concurring Opinion by Justice Carter

OPINION

This case is a tale of competing and parallel actions for divorce in two sister states: Texas and Louisiana. Since the date of different occurrences have a distinct impact on a complete understanding of this case, a chronology of events is helpful at the outset.

1.     James Frank Marsalis, his wife Candice Rae, and their six children had lived in Louisiana for several years, where they owned a home. James commenced working in Texas and was commuting back and forth between his workplace and his home, spending nights in both places. James' parents resided in Panola County, Texas. After some temporary moves back and forth and visits with James' parents, in order to maintain a more stable marriage, all of the Marsalis family moved from Louisiana to Panola County, Texas, in 2009 and placed their home and property in Louisiana on the market for sale. According to James, this move took place March 21; Candice testified at the Panola County hearing that it occurred April 14.[1]

2.     Apparently, the effort to achieve the marital stability they sought by moving to Texas failed. James filed a suit July 29, 2009, in Panola County, Texas;[2] this action sought a dissolution of the marriage, a disposition of their community property, and a child custody adjudication of the couple's six children.

---

[1]The Louisiana appellate decision, mentioned hereinafter, indicates that Candice testified in the Louisiana hearing that the move occurred in March.

[2]It is long well settled that the six-month residency in the State of Texas set out in Section 6.301 of the Texas Family Code is not a jurisdictional requirement. TEX. FAM. CODE ANN. § 6.301 (Vernon 2006); *Perry v. Copeland*, 323 S.W.2d 339, 342 (Tex. Civ. App.—Texarkana 1959, writ dism'd) (citing *Aucutt v. Aucutt*, 122 Tex. 518, 62 S.W.2d 77 (1933); *Ex parte Tyler*, 152 Tex. 602, 261 S.W.2d 833, 834 (1953)).

2

3. After James filed for divorce (August 9), Candice took the children and returned to reside in the still-unsold house in Louisiana where the family had previously resided.

4. In September, Candice filed an action for divorce in St. Landry Parish, Louisiana, attaching a copy James' Texas petition for divorce to her pleading. Candice then filed a special appearance and plea in abatement before the Panola County court, arguing that under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the Panola County court lacked subject-matter jurisdiction over the children because the children had not lived in Texas for six consecutive months prior to the filing of the divorce.

5. On December 7, a hearing was held in the Louisiana divorce action. James was not present.

6. James filed an amended petition in the Panola County action on December 16.

7. On January 5, 2010, James' Louisiana attorney presented objections to the form and content of the proposed Louisiana divorce decree. A hearing was held on the following day and the Louisiana court, rejecting James' objections, entered a divorce decree. At some point thereafter, James appealed the grant of the Louisiana divorce decree.

8. On January 11, Candice caused a copy of the Louisiana divorce decree to be filed with the District Clerk in Panola County.

9.    On January 19, the judge in Panola County entered an order overruling Candice's special appearance and plea in abatement, finding that it had "subject matter jurisdiction over the parties and all matters in controversy . . . ."

10.    A hearing on the merits of the Panola County action was held on February 4 and a final decree of divorce was entered March 12, which dissolved the marriage, divided the community property, and adjudicated custody of the children.[3] Candice filed an appeal of that judgment of divorce.

11.    The Louisiana Court of Appeals for the Third Circuit issued an opinion on December 8, 2010, affirming the judgment of divorce entered by the St. Landry Parish, Louisiana, District Court.

In her sole point of error, Candice contends that the trial court erred by denying her special appearance and objections to the court's jurisdiction to adjudicate custody, maintaining that Louisiana, not Texas, was the children's home state and, therefore, the Texas trial court lacked subject-matter jurisdiction to adjudicate custody.

We affirm the Texas trial court's judgment of divorce because no other court of any other state would have jurisdiction under Section 152.201 of the Texas Family Code.

---

[3]On September 10, 2009, Candice filed a divorce and custody action in Louisiana.  However, James filed the Texas proceeding first, when all the parties and children resided in Texas; therefore, Section 152.206, the Texas Family Code section governing simultaneous proceedings in different states, does not apply to bar Texas from exercising its jurisdiction over this matter.  *See In re Presley*, 166 S.W.3d 866, 868 (Tex. App.—Beaumont 2005, orig. proceeding); *In re Brilliant*, 86 S.W.3d 680, 690 (Tex. App.—El Paso 2002, no pet.).

4

*At the time the Texas suit was filed*, *no other state had jurisdiction under the UCCJEA*

Both Texas and Louisiana have adopted the UCCJEA.[4]

Subject-matter jurisdiction exists when the nature of the case falls within a general category of cases that the court is empowered, under applicable statutory and constitutional provisions, to adjudicate. *In re Barnes*, 127 S.W.3d 843, 846 (Tex. App.—San Antonio 2003, no pet.) (citing *McGuire v. McGuire*, 18 S.W.3d 801, 804 (Tex. App.—El Paso 2000, no pet.)). Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction over custody issues is governed by the UCCJEA. TEX. FAM. CODE ANN. §§ 152.001–.317 (Vernon 2008); *Barnes*, 127 S.W.3d at 846. That Act provides mandatory jurisdictional rules for an original child custody proceeding.[5] TEX. FAM. CODE ANN. §§ 152.001–.317; *Barnes*, 127 S.W.3d at 846. A Texas court must have subject-matter jurisdiction under the UCCJEA in order to make a child custody determination.

Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject-matter jurisdiction is never presumed and cannot be waived. *Tex. Ass'n of Bus.*, 852 S.W.2d at 442–44.

---

[4]The pertinent sections of Louisiana's version of the UCCJEA are substantially the same as those adopted by Texas. LA. REV. STAT. ANN. §§13:1801, 13:1802, 13:1813, 13:1818 (West, Westlaw current through 2011).

[5]This is a divorce "proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue"; therefore, it is a child custody proceeding as that term is defined by Section 152.102(4) of the Texas Family Code. TEX. FAM. CODE ANN. § 152.102(4).

Section 152.201 of the Texas Family Code governs the initial child custody jurisdiction of courts in the State of Texas and allows Texas courts to make an initial child custody determination only if the statutory requirements are fulfilled. In making a determination regarding jurisdiction, the location of the parties and the children is a vital factor. Because the parties and the children were not within either Texas or Louisiana during the entire period of time set out in the above chronology of events, we must first determine the critical date upon which inquiry of the surrounding circumstances of the parties should be applied. Jurisdiction is determined based upon circumstances existing at the time suit is filed in Texas. *Brilliant*, 86 S.W.3d at 692. Here, suit was filed in Panola County, Texas, on July 29, 2009. Accordingly, we look to the status of the parties and the children on that date: July 29, 2009. *See id.*

We will summarize the four possible bases of jurisdiction in Texas and then examine whether any of the four authorizes a Texas court to conduct this custody determination.

(1) Home State Jurisdiction—Under the UCCJEA, a state has jurisdiction if that state was one in which a child lived with a parent for at least six consecutive months immediately before the commencement of a child custody proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from the state, but a parent continues to live in that state. *See* TEX. FAM. CODE ANN. §§ 152.102(7), 152.201(a)(1). The word "lived" connotes physical presence. *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005). In *Powell*, the Texas Supreme Court explained that the Legislature used the word "lived"

6

to avoid "complicating the determination of a child's home state with inquiries into the states of mind of the child or the child's adult caretakers." *Id.* (citing *Escobar v. Reisinger*, 64 P.3d 514, 517 (N.M. Ct. App. 2003)). The UCCJEA suggests that the child's physical location is the central factor to be considered when determining the child's home state. *Id.*

Both James and Candice concentrate their arguments on the issue of home state jurisdiction. Although James adamantly argues that Texas was the children's home state, Candice disputes that. Candice maintains that the children's four-month stay in Texas was merely a temporary stay, making Louisiana the children's home state.[6] The first cogent issue in determining whether Texas was the home state is a determination of whether the children were physically present in Texas for six consecutive months preceding James' filing on July 29, 2009. James testified that he, Candice, and the children visited his parents in Texas in late January 2009, "preempting [sic] to talking about moving into a house down the street from them," and that the family "started to move [to Texas] in February." However, James clarified that the children moved to Texas on March 21, 2009, "[w]ith visitations [in Texas] before then." We observe that neither a "start to move" nor visitations within the State suffice for this determination. Therefore, we determine that the evidence presented by James is that the children moved to Texas on March 21. Candice testified that the children did not move to Texas until April 14, 2009 (in her words, to begin a "new start" in their lives). James and Candice concur that Candice and the children

---

[6]The evidence does not support a conclusion that the removal of the family from Louisiana to Texas was only a temporary move; the characterization of the move to Texas from Louisiana as being "temporary" was gleaned solely from the actions of the parties taken after they had permanently moved to Texas.

moved from Texas back to Louisiana on August 9, 2009. Irrespective of whether the children's move to Texas occurred in March or in April, six months had not elapsed before July 29, when James filed his petition for divorce in Panola County.

Both parties cite to *Powell* as an applicable authority in this case. In *Powell*, Russell and Sonja Powell and their child moved from Texas to Tennessee; after staying in Tennessee for ten months, Sonja returned to Texas, bringing the child with her, and filed for divorce and child custody determination in Texas, Russell remaining in Tennessee. *Id.* at 323–24. Sonja argued that the child's stay in Tennessee was only a temporary absence from Texas and that Texas remained the child's home state throughout his stay in Tennessee because Sonja intended to be there only temporarily. *Id.* at 326. In finding Tennessee to be the child's home state, the court rejected Sonja's arguments because the child's physical presence in Tennessee for more than six consecutive months (not the parent's state of mind concerning the permanence of the move) was the central factor in determining a child's home state under the UCCJEA. *Id.*

The *Powell* case is distinguishable from the present case because the child lived in Tennessee for six consecutive months and a parent lived in Tennessee at the time the Texas suit was filed. *See also Huffstutlar v. Koons*, 789 S.W.2d 707 (Tex. App.—Dallas 1990, orig. proceeding). Here, at the time of commencement of the suit, neither did the children live in Texas for six consecutive months nor did any member of the family (either the parents or the children) live in Louisiana.

8

As stated above, we determine jurisdiction based upon the circumstances as they existed on July 29, 2009, the date that the Texas action was filed. *See Brilliant*, 86 S.W.3d at 692. On that date, no one impacted by the dissolution of the marriage (not Candice, not James, and none of the children) lived in Louisiana. The subsequent decision by Candice to return to Louisiana did not abrogate that fact. Therefore, Louisiana could not have been the children's home state. On the other hand, the record establishes that the children were not physically present in Texas for six *consecutive* months before July 29, 2009. Rather, the record reflects that the children lived in Texas for (at most) five months before that date, although James and Candice had discussed in January a move to Texas, and that the children visited Texas frequently between February and March 21, 2009, before moving to Texas. Such sporadic presence in Texas does not satisfy the requirement that the children be physically present in Texas for six consecutive months. *See* TEX. FAM. CODE ANN. §§ 152.102(7), 152.201.

The facts clearly show that although Louisiana was not the home state of the children at the date of commencement, neither was Texas.

(2) Significant Connection Jurisdiction—A Texas court may also have jurisdiction if no court from another jurisdiction qualifies as the home state of the child under (1) above or the home state court of the child has declined to exercise jurisdiction on the ground that such court is an inconvenient forum or due to unjustifiable conduct (such as kidnapping) by a person seeking to invoke that court's jurisdiction, and: (1) the child and at least one parent have a significant

9

connection with Texas other than mere physical presence; and (2) "substantial evidence is available [in Texas] concerning the child's care, protection, training, and personal relationships." *See* TEX. FAM. CODE ANN. §§ 152.201(a)(2), 152.207–.208.

Both parties also cite to *Brilliant* as applicable. In *Brilliant*, Kristen, Regi, and their child lived in Massachusetts from the child's birth in June 1999 until April 16, 2000, when the father moved to Texas, his childhood and family home. *Brilliant*, 86 S.W.3d at 682–83. Kristen and the child joined the father in Texas in June 2000, with Kristen applying for jobs and having the child's immunization records forwarded to Texas. *Id.* Just a few weeks later, after Kristen expressed her intention to take the child and permanently return to Massachusetts, the father filed suit on July 19, and five days later, served Kristen with an order restraining her from removing the child from the county. *Id.* at 683. On July 27, Kristen and the child moved back to Massachusetts, in violation of the restraining order. *Id.* Kristen filed a plea to the jurisdiction, arguing that the child had spent only forty-five days in Texas, but she did not appear for the hearing. *Id.* The trial court found that although Texas was not the child's home state, it had jurisdiction over the child through significant connections. *Id.* In denying Kristen's motion for new trial and reconsideration, the trial court found that "[t]o grant the new trial and to decline jurisdiction, even on an inconvenient forum basis would be to condone [Kristen's] blatant disregard for court orders . . . ." *Id.* The trial court's decision was upheld on appeal.

10

As opposed to *Brilliant*, here, all parties appeared and presented evidence and no one has violated a restraining order. Due to the fact that both parties focused on attempts to establish home state jurisdiction (both at trial and on appeal), there is no evidence in the record regarding the children's significant connections to Texas or regarding their care, protection, training, or personal relationships.

Here, the record indicates that the children lived in Texas for about four months, that they frequently visited Texas before moving here, and that James and several coworkers stayed at a house in Texas during their "week on, week off" work week. In addition, it was shown that James' parents also lived in Texas, but no evidence was presented that this family relationship had a great impact on the children. These circumstances do not satisfy to provide substantial evidence of the children's care, protection, training, and personal relationships while in Texas. Therefore, Texas cannot exercise original jurisdiction under the significant connection provision.

(3)     More Appropriate Forum Jurisdiction—A Texas court has jurisdiction if all courts having jurisdiction under (1) or (2) above have declined to exercise jurisdiction, finding Texas the more appropriate forum. *See* TEX. FAM. CODE ANN. § 152.201(a)(3).

Texas courts do not acquire jurisdiction under this provision because there is no evidence that all courts having jurisdiction have declined to exercise jurisdiction or found that Texas courts are the more appropriate forum.

11

(4)    Default Jurisdiction—A Texas court has jurisdiction if no court of any other state would have jurisdiction under (1), (2), or (3) above.   *See* TEX. FAM. CODE ANN. § 152.201(a)(4).

Because there are no courts of any other states having jurisdiction in this case, the trial court properly exercised subject-matter jurisdiction to adjudicate custody of the children under the default provisions of Section 152.201(a)(4) of the Texas Family Code.   Accordingly, we overrule Candice's point of error and affirm the trial the court's judgment of divorce.

A.    *Louisiana judgment*, *competing jurisdiction*, *and comity*

Several weeks after James commenced the Texas divorce and custody action, Candice, on September 10, 2009, filed a divorce and custody action of her own in St. Landry Parish, Louisiana (attaching a copy of James' Texas original petition to her pleading).   That case was docketed as number 09-C-4858-B in the Louisiana court.   A hearing on Candice's petition in the Louisiana case was scheduled December 7, 2009.   Although James sent a handwritten pro se letter to the Louisiana court requesting a continuance, the motion was denied, statedly because of James' failure to provide a return address or other means of contacting him regarding an alternate hearing date.   A hearing on the petition was held, but neither James nor anyone purporting to represent him was present for the hearing.   *Marsalis v. Marsalis*, 52 So.3d 295, 299 (La. App. 3 Cir. 12/8/10).

Judging from the recitations in the reported case mentioned below, the evidence produced at the hearing was that Candice and the children considered Louisiana their home, that the children

12

had spent their entire lives (except for the months spent in Texas) living in Louisiana, and that she provided evidence regarding the past and future care, protection, training, and personal relationships with emphasis on the connections these things had with Louisiana.[7]   Based on the evidence before it, the trial court ruled that Louisiana was the children's home state.   The court's judgment adjudicated custody and awarded spousal support, child support, and the use and occupancy of the marital residence in Louisiana.[8]   The judgment was affirmed on appeal to the Court of Appeals of Louisiana, Third Circuit.   *Id.* at 298–99.   Other than taking note of James' letter, the trial court made no inquiry into the circumstances or jurisdictional basis of the previously filed Texas action.

In an effort to not ignore the benefits of comity,[9] we have researched and examined the Louisiana appellate opinion in *Marsalis.*[10]   Apparently, James' sole point on appeal in that case

---

[7]We observe that while Candice apparently introduced evidence of some significant connections to Louisiana in the hearing on her Louisiana divorce action, those significant connections did not apparently exist on the date the Texas action for divorce was filed; they had ceased during the stay in Texas and apparently resumed after Candice and the children returned to Louisiana.

[8]In her appeal, Candice does not argue that the Texas courts should defer to the Louisiana judgment.

[9]"The lack of comity with respect to custody decrees of other states is a mischief the law [that is, the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act  (UCCJA)] was enacted to remedy."   *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 314–15 (Tex. App.—Dallas 2008, no pet.) (quoting *Greene v. Greene*, 432 So.2d 62, 65 (Fla. Dist. Ct. App. 1983)).   By adopting the UCCJA (and subsequently the UCCJEA), the Legislature "has effectively commanded the courts to defer to a sister state which has already correctly assumed jurisdiction in a child custody case *when that other state exercises its jurisdiction in a fashion consistent with the Act*."   *Id.*   We agree with the logic set forth by the Florida court in *Greene*.

[10]Sections 152.201(a)(4) and 152.206 of the Texas Family Code correspond to Louisiana statutes 13:1813(A)(4) and 13:1818, respectively.   The language of the referenced Louisiana statutes is substantially similar, if not identical, to the language of the corresponding Texas statutes.

13

complained of the entry of a judgment before staying its proceedings and communicating with the Texas court, a mandate of the UCCJEA.[11]  Rather than finding that Louisiana possessed home state jurisdiction (as found by the Louisiana trial court), the court of appeals held that Louisiana had jurisdiction based upon significant connections.  The Louisiana appellate court noted that James' letter failed to make any allegations regarding the children's presence or connections in Texas, found that "the only evidence presented supports a determination that no other state, including Texas, had jurisdiction [over the children]," and stated that "the evidence indicates that the children and [Candice] had significant connections to [Louisiana] other than mere physical presence."  52 So.3d at 299.[12]  Despite the trial court making no inquiry beyond the pleadings into the previously filed Texas action, the court held that the Louisiana trial court was not required to stay its proceedings or contact the Texas trial court under the UCCJEA's simultaneous proceeding provision because there was no evidence that Texas had jurisdiction substantially in accordance with the UCCJEA.  *Id.* at 297–99; LA. REV. STAT. ANN. § 13:1818; TEX. FAM. CODE ANN. § 152.206.  Interestingly, however, there was likewise no evidence given that the Texas court did not have jurisdiction.

---

[11]Compliance by the Louisiana trial court with this may well have avoided the conflicts which have arisen here. During a hearing, the Panola County trial court observed that "the easiest thing for me to do is just throw it back to Louisiana and let them fool with it."

[12]We note that the strong and reasoned dissent by Justice David E. Chatelin of the Louisiana Third Circuit Court of Appeals expresses many of the same concerns about the jurisdiction of the Louisiana courts that have been raised and discussed here.   Justice Chatelin would have reversed the Louisiana trial court and required it to abate its proceedings, confer with the Texas court, and dismiss the case unless Texas declined jurisdiction on the basis of Louisiana being a more convenient forum.

Here, the Texas trial court had the advantage of hearing testimony and evidence regarding the children from both James and Candice, whereas the Louisiana courts only had evidence presented by Candice. As per our ruling above, on the date James filed his petition in Texas, neither parent nor any of the children lived in Louisiana and no state other than Texas would have had jurisdiction under the UCCJEA. *See* TEX. FAM. CODE ANN. § 152.201; LA. REV. STAT. ANN. § 13:1813. Therefore, at the time Candice filed her petition in Louisiana, Texas already had jurisdiction in accord with the UCCJEA under Section 152.201(a)(4), although it appears that the Louisiana court did not take that into account. Because Texas already had jurisdiction at the time the Louisiana suit was filed, the Louisiana trial court could not exercise jurisdiction over the case. *See* TEX. FAM. CODE ANN. § 152.206; LA. REV. STAT. ANN. § 13:1818. Accordingly, the Louisiana trial court's judgment and child support and custody orders were entered without jurisdiction. *See* TEX. FAM. CODE ANN. § 152.206; LA. REV. STAT. ANN. § 13:1818.

The Marsalises find themselves in a situation of competing custody orders, parallel appeals, relitigation of custody issues, and interstate jurisdictional competition—the very problems the UCCJEA was enacted to prevent. TEX. FAM. CODE ANN. §§ 152.001–.317. Since the support orders entered in the two respective actions for divorce do not comport with each other, it is extremely likely that confusion as to the enforceability of each will become an issue in the future. Each of the trial courts became aware of the pendency of custody actions in the other state. Perhaps this judicial conflict would not have arisen if either trial court had seen fit to make contact

15

with the other (even if they were not absolutely required under the UCCJEA to do so and even if such a communication between the courts of the respective states did not result in a resolution of the conflict).[13]

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice


CONCURRING OPINION

This result should be avoided. Some issues can best be resolved by a negotiated resolution, and this statute gives the trial judges the opportunity to do just that. Trial courts in different jurisdictions are encouraged to communicate when it is known that custody matters are filed in more than one state. After that conference, a trial court may decline to exercise jurisdiction if it finds that another state is the more appropriate forum. TEX. FAM. CODE ANN. §§ 152.201(a)(2), 152.206(b) (Vernon 2008). We have searched to determine if, as an appellate court, we have the authority to decline jurisdiction and resolve this matter relying on the doctrine of comity so that these parties would have only one court to answer to. But our function is to review the trial court record for error, not to attempt to make a policy determination that even

---

[13]The Louisiana court of appeals acknowledges that the Louisiana trial judge did not contact the Texas trial court, and the record reflects that although the Texas trial court knew of the pending Louisiana action, there is nothing in the record indicating that it communicated with the Louisiana trial court. *Marsalis*, 52 So.3d at 297–98.

though the trial court order is legally correct, we should reverse that order based on our judgment of what would serve the best interest of all parties.

Having found jurisdiction in the trial court in Texas, where the first action was filed, we may not simply "throw it back to Louisiana."  I concur in the judgment.


Jack Carter
Justice

Date Submitted:     January 25, 2011
Date Decided:       March 18, 2011