

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00551-CV

Richard Matthew **VILLARREAL**,
Appellant

v.

Rebecca L. **VILLARREAL**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-18202
Honorable Gloria Saldaña, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:   Karen Angelini, Justice
           Rebeca C. Martinez, Justice
           Patricia O. Alvarez, Justice

Delivered and Filed:  August 3, 2016

REVERSED AND REMANDED

Richard Matthew Villarreal appeals the trial court's order dismissing the underlying cause. The trial court dismissed the cause after finding a final divorce decree entered by a tribal court divested the trial court of jurisdiction. We reverse the trial court's order and remand the cause for further proceedings.

### BACKGROUND

On October 31, 2013, Rebecca L. Villarreal filed an original petition for divorce in the underlying cause. Richard and Rebecca had four children, and the petition stated the parties would

try to reach an agreement regarding custody, visitation, and support. On December 4, 2013, the trial court entered a default order granting a motion to rule for costs and ordering Rebecca to pay $324.00 within twenty days. The order stated that failure to pay the full amount within the time allowed would result in a dismissal of the cause. No subsequent order dismissing the cause was entered.

On April 30, 2014, Rebecca filed a petition for divorce in the San Carlos Apache Tribal Court, and the tribal court signed a final divorce decree on May 15, 2014. The decree stated Richard was served on May 6, 2014, "and 30 days have elapsed since the filing of the complaint and no response or answer [was] filed." The decree granted a default divorce and awarded Rebecca "full and physical custody" of the children.

On May 4, 2015, Richard filed an original answer and counter-claim for divorce in the underlying cause. On May 15, 2015, Richard filed an amended answer and counter-claim requesting a temporary restraining order that would order Rebecca to turn over custody of the children to Richard. On May 15, 2015, the trial court signed a temporary restraining order in the underlying cause ordering Rebecca to turn over custody of the children to Richard. The order set a hearing for May 29, 2015. On May 29, 2015, the trial court signed an order extending the temporary restraining order and setting a hearing for June 12, 2015.

At the hearing on June 12, 2015, the trial court briefly heard argument regarding its jurisdiction after being presented with the final divorce decree entered by the tribal court. The trial court stated a staff attorney for the court was researching the jurisdictional issue. After a recess, the trial court announced it was following the staff attorney's recommendation that the trial court did not have jurisdiction. The trial court then allowed Richard's attorney to make an offer of proof on the jurisdictional issue. At the conclusion of the offer of proof, the following exchange occurred:

MR. GRUBBS [Richard's attorney]: Is the Court finding that the Indian Act applied to this and they [the tribal court] had jurisdiction?

THE COURT: It appears to me that it does, and that's basically what my attorney, the staff attorney, has indicated to me, that there is, at the very least, concurrent jurisdiction. And I'm looking at some of the research and it says that the "Indian Child Welfare Act does not completely divest state courts of jurisdiction over children of Indian descent in that it creates concurrent jurisdiction in case of children not domiciled on reservation; however, there is a presumption in favor of tribal court jurisdiction."

The other thing it says is, "In exercising jurisdiction concurrently with tribal courts under Indian Child Welfare Act with respect to Indian children who are not domiciled on their tribe's reservation, state court must defer to tribal court unless either parent objects," well, time came and went and there was no objection, "the tribe declines the transfer," well, it accepted jurisdiction, "or good cause is shown for retention of state jurisdiction, thus modifying the general rule that Indians off the reservation are subject to state jurisdiction."

So, just having read —

MR. GRUBBS: Is that a case or —

THE COURT: This is the research that the staff attorney's office did. It is 906 SW2d 152, 1995, entitled *Yavapai-Apache Tribe vs. Mejia.*

On July 31, 2015, the trial court signed the order dismissing the underlying cause. The order first notes the trial court questioned jurisdiction over the matter after the parties appeared before the court for temporary orders. The order further states the trial court found "that the final order of the tribal court related to the divorce decree divests Bexar County of jurisdiction over the instant matter and finds that [the] instant matter should be dismissed." Richard appeals.

## DISCUSSION

Richard contends the trial court erred in concluding the tribal court had concurrent jurisdiction because the Indian Child Welfare Act (ICWA) was inapplicable and Texas was the home state of the children on the date Rebecca filed the petition in the underlying cause. Rebecca responds that the trial court's discussion of the ICWA at the conclusion of the hearing was dicta and did not form the basis for the trial court's ruling. Rebecca further responds the trial court's ruling should be upheld on appeal even if the trial court applied the ICWA because the following alternative legal theories would support the trial court's order: (1) the underlying cause should

have been administratively dismissed twenty days after the default order granting the motion to rule for costs was entered; (2) res judicata barred the trial court from taking any action on Richard's claims; or (3) the trial court could have declined to exercise its jurisdiction because the trial court was an inconvenient forum or Richard had engaged in unjustifiable conduct.

We review a trial court's ruling on a motion challenging its subject matter jurisdiction de novo. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). With regard to the alternative legal theories advanced by Rebecca in her brief, we agree with Richard that the trial court's order can only be upheld based on the legal theories that were before the court at the time of the hearing. *See Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1996). ("We must uphold a correct lower court judgment *on any legal theory before it*, even if the court gives an incorrect reason for its judgment.") (emphasis added). "We will not affirm the trial court's order based on a legal theory not presented to the trial court and to which [Richard] had no opportunity to respond." *Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 289, 290 (Tex. App.—Dallas 2008, pet. denied); *see also HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 779 (Tex. App.—Dallas 2012, pet. dism'd) (holding issue of res judicata would not be considered on appeal because "res judicata was not presented to the trial judge as a basis for judgment"); *Coleman v. Klöckner & Co. AG*, 180 S.W.3d 577, 586-87 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding appellants waived legal theory not presented to trial court). Because none of Rebecca's alternative theories were presented to the trial court, the only issue properly before this court is whether the trial court erred in concluding the final divorce decree entered by the tribal court divested the trial court of jurisdiction.[1]

---

[1] We also note that the trial court's finding that the tribal court's decree "divested" it of jurisdiction is inconsistent with Rebecca's arguments that the trial court declined jurisdiction or that the trial court did not retain jurisdiction because the underlying cause should have been administratively dismissed.

The ICWA contains a provision addressing Indian tribe jurisdiction over Indian child custody proceedings. 25 U.S.C. § 1911. The term "child custody proceeding" is defined to include foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. *Id.* at § 1903(1). The term is expressly defined to not include a placement based "upon an award, in a divorce proceeding, of custody to one of the parents." *Id.*

The case cited by the trial court in its ruling involved a lawsuit seeking the termination of parental rights which is included in the ICWA's definition of child custody proceedings. *See Yavapai-Apache Tribe v. Mejia*, 906 S.W.2d 152, 158 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding [leave denied]). Because the children were not domiciled or residing on the reservation, the issue presented on appeal was whether the lawsuit filed in state court should be transferred to the tribal court pursuant to 25 U.S.C. § 1911(b).[2] *Id.* at 158-59. As the trial court noted in its ruling in this cause, the Houston court held, "Section 1911(b) creates concurrent jurisdiction in the case of children not domiciled on the reservation; however, there is a presumption in favor of tribal court jurisdiction." *Id.* at 162-63. The Houston court also noted, however, that the definition of child custody proceeding in the ICWA does not include divorce proceedings. *Id.* at 162 n.4; *see also Comanche Nation v. Fox*, 128 S.W.3d 745, 753 (Tex. App.—Austin 2004, no pet.) ("[T]he Act's congressional findings reveal the intent that it apply only to situations involving the attempts of public and private agencies to remove children from their Indian families, not to inter-family disputes or divorce proceedings").

---

[2] Section 1911(b) titled "Transfer of proceedings; declination by trial court" provides, "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe." 25 U.S.C. § 1911(b).

Because the ICWA is inapplicable to the underlying cause, the tribe is treated as if it were a state of the United States. TEX. FAM. CODE ANN. § 152.104(b) (West 2014). On the date Rebecca filed her petition, Texas was the home state of the children.[3] Accordingly, the trial court had jurisdiction to make the initial child custody determination. *Id*. at § 152.201(a). Because Texas had jurisdiction before Rebecca filed her petition in tribal court, and the Texas proceeding had not been terminated and was not stayed, the tribal court could not exercise jurisdiction over the case. *Id*. at § 152.206(a) (providing a state may not exercise jurisdiction if a proceeding concerning the custody of a child has already been commenced in a court of another state having jurisdiction); *In re Marriage of Marsalis*, 338 S.W.3d 131, 139 (Tex. App.—Texarkana 2011, no pet.) (holding Louisiana was without jurisdiction to enter child custody orders because Texas already had jurisdiction at the time the Louisiana suit was filed); *In re Burk*, 252 S.W.3d 736, 740 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding [mand. denied]) (noting second state is precluded from exercising jurisdiction where suit is first filed in another state which has jurisdiction). Therefore, because the tribal court lacked jurisdiction to enter the decree, the decree could not divest the trial court of its jurisdiction. *See In re Marriage of Marsalis*, 338 S.W.3d at 139. Accordingly, the trial court erred in dismissing the underlying cause.

### CONCLUSION

The trial court's order is reversed, and the cause is remanded to the trial court for further proceedings.

Rebeca C. Martinez, Justice

---

[3] "Home state" is defined as the state in which a child lived with a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. *Id*. at § 152.107(7). Although Richard made a vague reference to being in Texas "approximately five months," he specifically testified that he and the children were living in Texas for at least six months before the divorce filing. The trial court's finding that it was "divested" of jurisdiction implies the trial court found it had jurisdiction when Rebecca filed the petition.