

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00004-CV

_____


IN THE INTEREST OF S.M.A., A CHILD


On Appeal from the County Court at Law
Cass County, Texas
Trial Court No. 15C300-CCL


Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

The County Court at Law of Cass County, Texas, appointed Mother and Father[1] as joint managing conservators of their daughter, Samantha, with Father having the exclusive right to designate the child's primary residence "within Cass County, Texas[,] or any contiguous county." Mother, a resident of the State of Georgia, appeals this judgment on the ground that the trial court lacked subject-matter jurisdiction because Georgia was Samantha's home state. Because we find that the trial court properly exercised subject-matter jurisdiction over this suit affecting the parent-child relationship (SAPCR), we affirm its judgment.

## I. Factual Background

Samantha was born to Mother and Father out of wedlock on May 3, 2011, in Atlanta, Georgia. Mother, Father, and Samantha lived in the same residence in Georgia until they moved to Cass County, Texas, in August 2011, and again returned to Georgia a few months later. From there, the appellate record demonstrates the following timeline of events:

- 2013: Father moves to Cass County on his own, but later returns to Georgia.
- August/September of 2014: Father returns to Cass County with Samantha
- February 20, 2015: Mother picks Samantha up in Texas and returns with the child to Georgia
- May 11, 2015: Father picks Samantha up in Georgia and returns to Texas with her
- July 1, 2015: Father files a SAPCR in Cass County

In response to Father's petition, Mother filed a SAPCR in Georgia, which is still pending, and argued that the County Court at Law of Cass County did not have subject-matter jurisdiction

---

[1]To protect the identity of the child, we will not include the names of the parties in this opinion. *See* TEX. R. APP. P. P. 9.8.

over the case. The trial court denied Mother's plea to the jurisdiction after determining that "neither Texas nor Georgia [was] the child's home state," that Father and Samantha had significant connections to Texas, that substantial evidence was available in this State, and that Texas was not an inconvenient forum.

Mother argues that the trial court erred in concluding that Georgia was not Samantha's home state because Samantha's presence in Texas was intended to be temporary and did not constitute an intention to change the child's residence. Specifically, she points to Father's acknowledgement (a) that he was only supposed to bring Samantha to Texas in August or September 2014 for one month and (b) that Father was allowed to pick Samantha up in Georgia on May 11, 2015, on the condition that he return her by July 1.[2] In support of her position, Mother also points out that Father actively maintained a residence in Georgia, had a Georgia driver's license, and received Georgia state benefits until May 2015.

## II. Standard of Review and Relevant Statutes

"Subject-matter jurisdiction is essential to the authority of a court to decide a case," "is never presumed[,] and cannot be waived." *In re Marriage of Marsalis*, 338 S.W.3d 131, 134–35 (Tex. App.—Texarkana 2011, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 442–44 (Tex. 1993)). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Id.* at 135 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

---

[2]Father testified that he intended to take the child back to Georgia on July 1, 2015, but changed his mind.

Subject-matter jurisdiction in a SAPCR is governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which is codified in Chapter 152 of the Texas Family Code. TEX. FAM. CODE ANN. §§ 152.001–.317 (West 2014 & Supp. 2017); *see id.*[3] "Section 152.201 of the Texas Family Code governs the initial child custody jurisdiction of courts in the State of Texas and allows Texas courts to make an initial child custody determination only if the statutory requirements are fulfilled." *Marsalis*, 338 S.W.3d at 135. In relevant part, Section 152.201 states,

> (a) . . . [A] court of this state has jurisdiction to make an initial child custody determination only if:
>
> > (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> >
> > (2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:
> >
> > > (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> > >
> > > (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

---

[3]In Georgia, the UCCJEA is codified in Article 3, Chapter 9, of the Code of Georgia. GA. CODE ANN. §§ 19-9-40 to -104 (West, Westlaw current through July 10, 2018).

TEX. FAM. CODE ANN. § 152.201 (West 2014).  As used in Section 152.201, the term "home state"

means:

> the state in which a child lived with a parent or a person acting as a parent for at
> least six consecutive months immediately before the commencement of a child
> custody proceeding.  In the case of a child less than six months of age, the term
> means the state in which the child lived from birth with a parent or a person acting
> as a parent.  A period of temporary absence of a parent or a person acting as a parent
> is part of the period.

TEX. FAM. CODE ANN. § 152.102(7).

Under Section 152.201, "[t]he word 'lived' connotes physical presence."  *Marsalis*, 338

S.W.3d at 135 (citing *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005)).  "In *Powell*, the Texas

Supreme Court explained that the Legislature used the word 'lived' to avoid 'complicating the

determination of a child's home state with inquiries into the states of mind of the child or the

child's adult caretakers.'"  *Id.* (quoting *Powell*, 165 S.W.3d at 326).  Accordingly, "the child's

physical location is the central factor to be considered when determining the child's home state."

*Id.* (citing *Powell*, 165 S.W.3d at 326).  The intention of the parties or their own beliefs as to what

state is the child's home state are irrelevant.  *In re Walker*, 428 S.W.3d 212, 217 (Tex. App.—

Houston [1st Dist.] 2014, no pet.).[4]

---

[4]Mother cites cases predating *Powell* in support of her argument that Samantha's arrival in Texas in August or
September 2014 "was supposed to be a temporary trip" and that "temporary absence from Georgia doesn't affect
[Samantha's] residence."  *See In re Brilliant*, 86 S.W.3d 680, 686 (Tex. App.—El Paso 2002, no pet.).  "The test for
'residence' or 'domicile' typically involves an inquiry into a person's intent," but the question of a child's home state
does not.  *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005) (quoting *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.
1964)).  Thus, we look to Samantha's physical presence in determining the issue of home state, are not determining
the issue of her residence, and decline to examine the parties' subjective intent in deciding whether Texas or Georgia
is Samantha's home state.  *See id.*

**III.    Analysis**

**A.    Neither Texas Nor Georgia Was Samantha's Home State**

First, we determine whether Texas or Georgia was Samantha's home state on the date of the commencement of the proceeding. *See* TEX. FAM. CODE ANN. § 152.201(a)(1). "Jurisdiction is determined based upon circumstances existing at the time suit is filed in Texas." *Marsalis*, 338 S.W.3d at 135. Thus, we look to the status of the parties as of the date the SAPCR was filed on July 1, 2015, by reviewing Samantha's physical presence from January 1, 2015. *See id.*

During that time period, Samantha was in Georgia from February 20 to May 11. Thus, at the time of commencement of the suit, Samantha lived in neither Texas nor Georgia for six consecutive months. Applying the plain meaning of Section 152.201, we conclude that the trial court was correct in determining that neither Texas nor Georgia was Samantha's home state on the date of the commencement of the proceeding. *See id.* at 136 (finding that neither Texas nor Louisiana was the home state of the children on the date of the commencement of the proceeding since the children did not live in either state for six consecutive months before the commencement of the proceeding).

Next, we must determine if Texas or Georgia "was the home state of the child within six months before the commencement of the proceeding." TEX. FAM. CODE ANN. § 152.201(a)(1); *Walker*, 428 S.W.3d at 218 (citing *In re K.Y.*, 273 S.W.3d 703, 707 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[A]s of April 2006, the children had lived in Texas for at least six continuous months, and because April is within six months before the commencement of this proceeding in September 2006, Texas was the children's home state, and the trial court had subject[-]matter

6

jurisdiction."); *In re Burk*, 252 S.W.3d 736, 741 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (because Texas was child's home state until July 27 and July 27 is within six months preceding commencement of proceeding, Texas had home state jurisdiction); *In re Estes*, 153 S.W.3d 591, 598 (Tex. App.—Amarillo 2004, orig. proceeding) (determining whether there was any date during six months preceding date of commencement when children lived in Texas for at least six consecutive months), *overruled in part on other grounds by Powell*, 165 S.W.3d at 327–28).

The trial court heard conflicting evidence as to when Samantha arrived in Texas in 2014. Samantha's father and paternal grandmother testified that Samantha began living in Texas on August 15, 2014. Although Mother testified that Samantha was in Georgia until September 2014, she later stated that she was unsure of the exact date of the move. During the hearing, a text message exchange between Mother and Father established that Mother told Father to "take" Samantha on August 10, 2014. The trial court found that "[e]xcept for a period between the end of February, 2015, and early May, 2015, the child has resided with h[er] father and paternal grandmother in Texas for over a year, beginning in August, 2014." Because there was no evidence as to whether the child was present before August 20, 2014, the trial court concluded that Texas was not Samantha's home state within six months before the commencement of the proceeding.

Yet, with this same information, we conclude that Georgia was not Samantha's home state within six months before the commencement of the proceeding because there was no date between

7

January 1, 2015, and July 1, 2015, when Samantha lived in Georgia for at least six consecutive months.[5]

### B. The Trial Court Had Significant-Connection Jurisdiction

Accordingly, we look to Section 152.201(a)(2) to determine if (1) Samantha and Father have significant connections with Texas "other than mere physical presence" and (2) substantial evidence is available in Texas concerning Samantha's "care, protection, training, and personal relationships."[6] TEX. FAM. CODE ANN. § 152.201(a)(2). "A high level of physical presence in Texas is not necessary to satisfy the significant-connection standard." *In re S.J.A.*, 272 S.W.3d 678, 685 (Tex. App.—Dallas 2008, no pet.) (citing *In re Forlenza*, 140 S.W.3d 373, 378 (Tex. 2004)). "Further, the question is not which state has the *most* significant connection with the children." *Id.* (citing *Forlenza*, 140 S.W.3d at 378; *In re Brown*, 203 S.W.3d 888, 894 (Tex. App.—Fort Worth 2006, orig. proceeding) (noting that, when the child did not have a home state, both Missouri and Texas could have significant connection jurisdiction if statutory requirements met)). "Rather, in determining whether the record supports a finding the child[] and [Father] have a significant connection with Texas, we look at the nature and quality of the child[]'s contacts with Texas." *Id.* (citing *Forlenza*, 140 S.W.3d at 377–78).

Here, Father and Samantha had previously lived in Texas in August 2011 and returned to Georgia a few months later. Aside from the time period between February 20, 2015, and May 11,

---

[5]Because Georgia was not Samantha's home state, the trial court did not have to wait for Georgia to decline its exercise of jurisdiction under Section 152.201(a)(2).

[6]"Significant connection jurisdiction should be employed only when Texas is not the home state and it appears that no other state could assert home state jurisdiction." *In re Oates*, 104 S.W.3d 571, 578 (Tex. App.—El Paso 2003, orig. proceeding)).

2015, Samantha lived with her Father and paternal grandmother in Texas from August 2014 until July 1, 2015.  The trial court heard evidence that Samantha had other relatives in Texas and was cared for by Father and her paternal family while she lived in Texas.  The trial court also saw numerous photographs of the child enjoying the company of friends and relatives while living in Texas, which showed that she had many personal relationships here.  The photographs also showed that Samantha had many personal belongings in Texas and was well-provided for.  This evidence supports the trial court's conclusion that Father and Samantha had significant connections with Texas other than mere presence.[7]  *See In re Meekins*, No. 01-17-00696-CV, 2018 WL 1801321, at *9 (Tex. App.—Houston [1st Dist.] Apr. 17, 2018, orig. proceeding) (citing *Forlenza*, 140 S.W.3d at 376–77).[8]  Additionally, in light of evidence showing the nature of Samantha's relationship with family and friends in Texas, the trial court properly concluded that substantial evidence was available in Texas concerning her present and future care, personal relationships, protection, and training.  *See S.J.A.*, 272 SW.3d at 687.

We conclude that the trial court had jurisdiction under Section 152.201(a)(2) of the Texas Family Code.  Therefore, we overrule Mother's sole issue on appeal.

---

[7]Mother's appellate brief does not challenge the trial court's significant-connection conclusion.

[8]The trial court heard that Samantha's pediatrician was in Georgia and that she was enrolled in school there at the time the proceedings were filed.

## IV.    Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:      July 10, 2018
Date Decided:        July 17, 2018