

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00015-CV

IN THE MATTER OF THE MARRIAGE OF
MATTHEW THOMAS FLOWERS AND EMMA MARY FLOWERS
AND IN THE INTEREST OF E.M.F., A CHILD

On Appeal from the 459th District Court
Travis County, Texas
Trial Court No. D-1-FM-18-004168

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Just after Emma Mary Flowers moved with her one-year-old son, E.M.F., to Michigan, Matthew Thomas Flowers filed a suit affecting the parent-child relationship seeking temporary child custody orders. After a Travis County district court[1] (Texas Court) entered temporary orders, and Matthew amended his original petition adding a petition for divorce, Emma filed a complaint in the 33rd Circuit Court in Charlevoix County, Michigan (Michigan Court), seeking an emergency ex parte temporary order under the temporary emergency jurisdiction provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* TEX. FAM. CODE ANN. § 152.204; MICH. COMP. LAWS ANN. § 722.1204. Following the Texas Court's determination that it had jurisdiction under the UCCJEA, the Michigan Court rescinded its emergency temporary order and dismissed Emma's complaint for lack of jurisdiction. Upon a final hearing, the Texas Court entered a final judgment granting Matthew's petition for divorce and entering child custody orders.

On appeal,[2] Emma only challenges the Texas Court's subject-matter jurisdiction to enter child custody orders under the UCCJEA. Because we find that the Texas Court had subject-matter jurisdiction under the UCCJEA, we affirm its judgment.

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Although Emma's notice of appeal was not filed within the twenty-day period allowed for an appeal under the UCCJEA (*see* TEX. FAM. CODE ANN. § 152.314 (establishing that appeals from final orders under the UCCJEA are expedited); TEX. R. APP. P. 28.1(a) ("appeals required by statute to be . . . expedited . . . are accelerated appeals"); TEX. R. APP. P. 26.1(b) (establishing that a notice of appeal in an accelerated appeal is due "within 20 days after the judgment or order is signed")), the notice of appeal was filed within the period allowed, upon motion, for extending the time to file a notice of appeal under Rule 26.3. When, as here, no motion for extension has been filed, we may

## I.    Background

E.M.F. was born on June 14, 2017, in South Carolina, where Matthew, Emma, D.F.,[3] and E.M.F. resided until around February 28.  On either February 28 or March 1, they moved to Austin, Texas, where Matthew had a job at Indeed.  In June, Matthew, Emma, and E.M.F. took a one-week trip to Michigan, where Emma's extended family lived, to celebrate E.M.F.'s birthday.  Even though Matthew described that trip as a brief vacation, Emma maintained that it was her intent to move to Michigan at that time.  Nonetheless, they all returned to Texas, where they remained until July 5 or 6, when Emma and E.M.F. moved to Michigan.

On July 9,[4] Matthew filed his Original Petition in Suit Affecting the Parent-Child Relationship[5] (Original SAPCR Petition) in the Texas Court.  In his Original SAPCR Petition, Matthew alleged, "No court has continuing jurisdiction of this suit or of the child the subject of this suit" and asked (1) that he and Emma be named joint managing conservators of E.M.F., (2) that he have the exclusive right to designate the primary residence of E.M.F., (3) that Emma be ordered to pay child support, and (4) that the trial court enter temporary orders after notice and a hearing.  A hearing on Matthew's request for temporary orders was set for July 27, and Emma was ordered

---

imply a motion for extension of time when a notice of appeal has been filed within Rule 26.3's fifteen-day period if the appellant provides a reasonable explanation for the necessity of an extension of time.  *See Jones v. City of Houston*, 976 S.W.2d 676, 677 (Tex. 1998); *Santis v. Travis Cent. Appraisal Dist.*, No. 03-19-00109-CV, 2019 WL 2939243, at *1 (Tex. App.—Austin July 9, 2019, no. pet. h.) (mem. op.).  Upon our request, Emma has provided a reasonable explanation for the necessity of an extension of time.  As a result, we find that the notice of appeal has been timely filed.

[3]D.F. is Matthew's biological son from a prior relationship.

[4]All dates are in 2018, unless otherwise noted.

[5]"Suit affecting the parent-child relationship" will be abbreviated "SAPCR."

to appear. Despite having been served with the Original SAPCR Petition and the order to appear, Emma failed to appear at the hearing. After a short hearing, the Texas Court entered temporary orders.[6]

On August 30, Matthew filed his First Amended Petition in SAPCR and Original Petition for Divorce. In the SAPCR portion of the amended petition, Matthew noted that the trial court had entered temporary orders and that there were no other "court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting" E.M.F. On September 6, Emma filed her Counter Petition in SAPCR and Counter Petition for Divorce (Counter Petition) in the Texas Court, in which she also asked for child custody orders. Emma attached an Out-of-State Party Declaration (Declaration) as Exhibit C to the Counter Petition. In the Declaration, Emma declared under penalty of perjury that she had not taken part in any other court case about E.M.F. in Texas, or in any other state or country, and that she did not know of any other court case that could affect this case, including custody, visitation, or child support, among other things.

On September 10, the Texas Court signed an order requiring Emma to appear on September 26 and respond to Matthew's motion to enforce the trial court's temporary orders. On September 20, Emma filed a complaint in the Michigan Court and obtained an emergency ex parte child custody order under the temporary emergency provisions of the UCCJEA. *See* TEX. FAM. CODE ANN. § 152.204; MICH. COMP. LAWS ANN. § 722.1204. In support of her emergency motion, Emma attached an affidavit in which she alleged that Matthew had committed domestic violence

---

[6]The trial court noted they were "emergency" temporary orders "in case something [was] filed in the other state and [Matthew had] not been served." At the time of the entry of the temporary orders, no child custody proceeding had been filed in Michigan.

4

against her and had physically abused his seven-year-old son, D.F. After consulting with the Michigan Court,[7] on September 26, the Texas Court held a hearing to determine whether it had jurisdiction under the UCCJEA.

At the hearing, Emma testified that the family moved to Texas on March 1 and that she and E.M.F. left Texas on July 5 or 6. While she and E.M.F. were living in Texas, they had no family nearby and no close friends, E.M.F. was not in daycare or school, and they did not attend church. She also testified that after they moved to Michigan, she had family support from her mother, aunts, uncles, grandparents, and stepfather. She explained that she had gone to work as a school bus driver and that her mother babysat E.M.F. while she was working. She also explained that E.M.F. had a friend that he saw at least once a week, a pediatrician, and a church. Emma stated that Matthew's son, D.F., acted like he did not like E.M.F. and that he had hit and kicked E.M.F. several times.

Matthew testified that he, Emma, and E.M.F. moved to Texas on February 28 and that they had taken a brief one-week vacation in Michigan. He denied that E.M.F. had any connection to Michigan before July 9, other than the brief vacation. He denied that he ever committed domestic violence against Emma and stated that he had cooperated with a Child Protective Services (CPS) investigation concerning the allegations of physical abuse. He also testified that he had received a closure letter from CPS saying that there was nothing to the claim.[8]

---

[7]*See* TEX. FAM. CODE ANN. § 152.204(d); MICH. COMP. LAWS ANN. § 722.1204(4) (requiring a court exercising emergency jurisdiction and a court exercising jurisdiction under Sections 201 to 203 of the UCCJEA to immediately communicate with each other).

[8]At the final hearing, a copy of the CPS Investigation Report, which indicated that the allegation of abuse was ruled out, was admitted into evidence.

After the hearing, the Texas Court determined that it had jurisdiction to hear the case because E.M.F. and Matthew had a significant connection with Texas and substantial evidence was available in Texas about the child's care, protection, training, and personal relationships. *See* TEX. FAM. CODE ANN. § 152.201(a)(2). The Michigan Court then dismissed Emma's complaint and rescinded its emergency ex parte temporary orders.

## II. Standard of Review

To be authorized to decide a case, a court must have subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *In re Marriage of Marsalis*, 338 S.W.3d 131, 134 (Tex. App.—Texarkana 2011, no pet.). A court has subject-matter jurisdiction "when the nature of the case falls within a general category of cases that the court is empowered, under applicable statutory and constitutional provisions, to adjudicate." *Marsalis*, 338 S.W.3d at 134 (citing *In re Barnes*, 127 S.W.3d 843, 846 (Tex. App.—San Antonio 2003, orig. proceeding)). Subject-matter jurisdiction in child custody proceedings[9] is governed by the UCCJEA.[10] *Id.* (citing TEX. FAM. CODE ANN. §§ 152.001–.317). The relevant time for determining whether the trial court had subject-matter jurisdiction under the UCCJEA is at the proceeding's commencement, defined as "the filing of the first pleading in a proceeding." TEX. FAM. CODE ANN. § 152.102(5); *In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004) (orig. proceeding). The initial pleading in this child custody proceeding was the Original SAPCR Petition filed by

---

[9]"'Child custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." TEX. FAM. CODE ANN. § 152.102(4).

[10]Both Texas and Michigan have adopted the UCCJEA. *See* TEX. FAM. CODE ANN. §§ 152.001–.317; MICH. COMP. LAWS ANN. §§ 722.1101–.1316.

Matthew.  As a result, the relevant time for determining whether the Texas Court had subject-matter jurisdiction was July 9.

## III.    Subject-Matter Jurisdiction Under the UCCJEA

Here, no other court had entered a child custody determination about E.M.F. before July 9. For that reason, this case involves an initial child custody determination.  Section 152.201 of the Texas Family Code, which governs the initial determination of child custody jurisdiction, states:

> (a)    Except as otherwise provided in Section 152.204, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> (1)    this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (2)    a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:
>
> > (A)    the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> >
> > (B)    substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
>
> (3)    all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or
>
> (4)    no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX. FAM. CODE ANN. § 152.201(a).  These provisions are "the exclusive jurisdictional basis for making a[n initial] child custody determination by a" Texas court.  TEX. FAM. CODE ANN.

7

§ 152.201(b).  In addition, the "[p]hysical presence of, or personal jurisdiction over, a party or a child" is neither necessary nor sufficient for a Texas court to make a child custody determination. TEX. FAM. CODE ANN. § 152.201(c).

## IV.    Analysis

In her brief, Emma contends that the Texas Court did not have subject-matter jurisdiction to enter a child custody determination.[11]  Since Section 152.201 is the exclusive basis for making an initial child custody determination, we examine whether the Texas Court had jurisdiction under any of its provisions.

The first jurisdictional basis is home state jurisdiction, which requires that the

> state was one in which a child lived with a parent for at least six consecutive months immediately before the commencement of a child custody proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from the state, but a parent continues to live in that state.

*Marsalis*, 338 S.W.3d at 135; *see* TEX. FAM. CODE ANN. §§ 152.102(7), 152.201(a)(1).  It is undisputed that as of July 9, neither Texas nor any other forum was the home state of E.M.F.

---

[11]Emma argues that the Texas Court exercised temporary emergency jurisdiction under Section 152.204 of the Texas Family Code when it entered its temporary orders, that from that point forward, it was exercising temporary emergency jurisdiction, and that it could not "retroactively change the basis" of its jurisdiction.  Emma's argument misconstrues both the law and the facts here.  In the Original SAPCR Petition, Matthew did not allege that E.M.F. was present in Texas, that E.M.F. had been abandoned, or that there was an emergency because E.M.F., his parent, or a sibling was the subject of, or threatened with, mistreatment or abuse.  There were therefore no pleadings that would have supported the Texas Court exercising temporary emergency jurisdiction.  *See* TEX. FAM. CODE ANN. § 152.204(a).  Rather, Matthew alleged that E.M.F. was a resident of Travis County and that no court had continuing jurisdiction of the suit or of E.M.F.  Those were enough pleadings to support, at least temporarily, the Texas Court exercising jurisdiction under Section 152.201.  Yet, Emma does not address Section 152.201 in her brief.  Although the Texas Court noted that the temporary orders were "emergency" orders, we do not construe this to mean that the Texas Court was exercising jurisdiction under Section 152.204.  And if the facts of the case as they existed on July 9 showed that the Texas Court had jurisdiction under any of the provisions of Section 152.201, then it properly exercised jurisdiction, even if it incorrectly identified the basis of its jurisdiction.

The second jurisdictional basis is significant connections/substantial evidence jurisdiction. This basis gives a Texas court jurisdiction when no forum has home state jurisdiction or the home state court has declined jurisdiction because it is an inconvenient forum or because of unjustifiable conduct by the person invoking that court's jurisdiction and (1) the child and at least one parent have a significant connection with Texas and (2) substantial evidence concerning the child's care, protection, training, and personal relationships are available in Texas. *Marsalis*, 338 S.W.3d at 136–37; *see* TEX. FAM. CODE ANN. §§ 152.201(a)(2), 152.207–.208. It is undisputed that Matthew, Emma, D.F., and E.M.F. had lived in Texas for a little over four months as of July 9 and that Matthew was employed in Texas. For E.M.F., who was one year old at the time, that was a significant portion of his life. Even so, there was no testimony that E.M.F. had any other familial relationships in Texas, that he had attended daycare, that he had any friends in Texas, or that he had ever seen a doctor in Texas. There was also no evidence that there was any person in Texas besides Matthew who could testify about E.M.F.'s care, protection, training, or personal relationships. The only evidence on these matters was the report of the CPS investigation about D.F., which occurred after E.M.F. had left Texas.

While the Texas Court found this evidence sufficient to give it significant connections/substantial evidence jurisdiction, we find this evidence rather tenuous to support the Texas Court's jurisdiction. That said, we need not decide whether this evidence is sufficient to give the Texas Court significant connections/substantial evidence jurisdiction since, as we discuss below, the Texas Court had default jurisdiction.

9

The third basis for jurisdiction is the more appropriate forum jurisdiction. This basis gives a Texas court jurisdiction if all courts having jurisdiction under home state jurisdiction or significant connections/substantial evidence jurisdiction have declined to exercise jurisdiction because Texas was the more appropriate forum. *Marsalis*, 338 S.W.3d at 137; *see* TEX. FAM. CODE ANN. § 152.201(a)(3). Here, there was no evidence that all courts having jurisdiction declined to exercise jurisdiction because Texas was the more appropriate forum. The Texas Court therefore did not acquire jurisdiction under this provision. *See Marsalis*, 338 S.W.3d at 137.

The final basis for jurisdiction is default jurisdiction. Under this provision, a Texas court has jurisdiction if no court of any other forum would have jurisdiction under any of the prior three bases. *Marsalis*, 338 S.W.3d at 137–38; *see* TEX. FAM. CODE ANN. § 152.201(a)(4). Here, the only other possible forum to have jurisdiction was the Michigan Court. No other forum had home state jurisdiction, and there was no evidence that the Michigan Court acquired more appropriate forum jurisdiction. Although there was evidence that E.M.F had many relatives in Michigan, there was no evidence of his relationship with them as of July 9, or that these family relationships had any great effect on him. And there was no evidence that he had any friends or a pediatrician in Michigan as of July 9. Finally, there was no evidence that substantial evidence on E.M.F.'s care, protection, training, or personal relationships was available in Michigan as of July 9. Rather, all the testimony in this regard concerned matters that occurred sometime after E.M.F. moved to Michigan.

Because there were no courts of any other state having jurisdiction under the first three bases, the Texas Court properly exercised subject-matter jurisdiction to determine child custody

10

issues concerning E.M.F. under the default provisions of Section 152.201(a)(4) of the Texas Family Code.  As a result, we overrule Emma's issues in this case.

## V.     Conclusion

For the reasons stated above, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:     August 5, 2019
Date Decided:       August 22, 2019

11