**Opinion issued January 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00922-CV

———————————

## IN RE ALYSSA WALKER, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## OPINION

Relator, Alyssa Walker, brings this original mandamus proceeding complaining of the trial court's order denying her plea to the jurisdiction in a child custody dispute.[1] The central issue to be decided in this case is whether Texas is the "home state" of the child for purposes of the Uniform Child Custody

---

[1]    The underlying case is *In the Interest of K.H.D., a Child*, No. 12-DCV-202504 in the 328th District Court of Fort Bend County, Texas, the Honorable Ronald Pope presiding.

Jurisdiction and Enforcement Act ("UCCJEA"), and, thus, whether the trial court properly assumed jurisdiction. Because we find that Texas is not the child's home state and the trial court erred in assuming jurisdiction, we conditionally grant Walker's petition for writ of mandamus, in part.

## Background

Walker and real party in interest, Jeremiah Dawson, are the parents of K.H.D. Walker and Dawson have never been married. K.H.D. was born on July 12, 2009 in Georgia. For a period of time, both before and after K.H.D.'s birth, Walker and Dawson lived together. In December 2010, the parties broke up and Walker moved out of the home she was sharing with Dawson and K.H.D. K.H.D. appears to have continued living with Dawson. However, the parties devised a schedule for Walker to see and take care of K.H.D.

At some point, Dawson decided that he wanted to move to Texas. In March 2012, Dawson traveled to Texas, along with his then-pregnant wife (who is not K.H.D.'s mother), in order to determine where they should move. According to Dawson, he, his pregnant wife, and K.H.D. then moved to Texas on May 25, 2012.[2] Walker remained in Georgia.

---

[2] This is disputed by Walker, who contends that K.H.D. did not move to Texas until July 25, 2012.

2

In early June 2012, Dawson and his wife, along with K.H.D., returned to Georgia, while they awaited the birth of Dawson's baby.[3] Dawson's child was born on June 25, 2012. During their time in Georgia, Dawson and his family, including K.H.D., lived at the residence where they had lived prior to May 25, 2012 and where they still had a lease. During this period, K.H.D. also spent time with Walker and lived with her for several days.

The family did not leave Georgia again until July 25, 2012, after the new baby received his first set of shots. Thus, the record is undisputed that K.H.D. was in Georgia from June 2012 until July 25, 2012, when Dawson, his wife, their child, and K.H.D. finally departed for Texas, bringing the family's belongings with a moving truck.

On August 10, 2012, Dawson started his job in Texas. K.H.D. began attending school in September. Over Thanksgiving 2012, Walker visited K.H.D. at Dawson's home in Texas. It was at this time that Walker took K.H.D. back to Georgia with her.[4]

---

[3]   Dawson and his wife testified that they continued seeing his wife's doctors in Georgia, even after May 25, 2012, and continued to go "back and forth" between Texas and Georgia. Further, although Dawson testified that he could not remember the exact date he returned to Georgia with K.H.D., his discovery responses reveal that K.H.D. was only with Dawson in Texas from May 25, 2012 through May 31, 2012 and June 6, 2012 through June 9, 2012. At the very least, Dawson returned to Georgia with K.H.D. prior to his baby's birth on June 25, 2012.

[4]   Dawson contends that K.H.D. was taken to Florida, not Georgia.

On November 27, 2012, Dawson filed a Petition in Suit Affecting the Parent-Child Relationship in Fort Bend County, Texas. Walker subsequently filed a Special Appearance, Plea to the Jurisdiction, Request for Court to Decline Jurisdiction, and Original Answer. The trial court held a hearing on December 17, 2012 on Walker's motion, at the conclusion of which, the trial court orally found that Texas was the home state of K.H.D. and denied Walker's plea to the jurisdiction.

On January 8, 2013, the trial court entered its order finding Texas to be the home state of K.H.D. and denying Walker's Motion for Special Appearance, Plea to the Jurisdiction, and Request for Court to Decline Jurisdiction. That same day, the trial court entered temporary orders that, *inter alia*, awarded Dawson possession of the child. Following the January order, K.H.D. was turned over to Dawson.

On January 24, 2013, Walker filed an initial child custody suit in Georgia. Walker also filed a motion for rehearing and reconsideration of her plea to the jurisdiction in the Texas child custody case. On May 28, 2013, the trial court denied Walker's motion.

Walker has now filed a petition for writ of mandamus with this Court. In her petition, Walker argues that Georgia, not Texas, is K.H.D's home state and, thus, the trial court is without jurisdiction over this child custody dispute.

4

## Standard of Review

Mandamus is an extraordinary remedy available to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002). A writ of mandamus is an appropriate means to require a trial court to comply with the UCCJEA's jurisdictional requirements.[5] *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005). A trial court abuses its discretion if it failed to analyze or apply the law correctly. *Id.* Construction of the UCCJEA's "home state" provision as codified in the Texas Family Code and the existence of subject-matter jurisdiction are questions of law that we review de novo. *Id.*

## Discussion

Dawson has the burden of alleging facts that establish that the trial court has jurisdiction under the UCCJEA. *See In re Hickman*, No. 01-12-00572-CV, 2012 WL 4858070, at *2 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, orig. proceeding) (mem. op.) (citing *In re Oates*, 104 S.W.3d 571, 575 (Tex. App.—El Paso 2003, orig. proceeding)). A Texas court has jurisdiction to make an initial child custody determination only if:

> (1)   this state is the home state of the child on the date of the
> commencement of the proceeding, or was the home state of the child

---

[5] In jurisdictional disputes arising from child custody proceedings, the relator need not demonstrate the inadequacy of an appellate remedy. *In re Oates*, 104 S.W.3d 571, 575 (Tex. App.—El Paso 2003, orig. proceeding).

within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2)  a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:

   (A)  the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

   (B)  substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3)  all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4)  no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX. FAM. CODE ANN. § 152.201(a) (West 2008).  Under this jurisdictional scheme, a child's home state has primary jurisdiction over custody proceedings. *See id.*; *see also Powell,* 165 S.W.3d at 325 ("The Texas Family Code accordingly prioritizes home-state jurisdiction . . . .").  Because this case involves an initial child-custody determination and home-state jurisdiction has priority, the central issue before the Court is whether Texas is K.H.D.'s home state.

**1.     Texas is not K.H.D.'s "Home State."**

A child's home state is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."  TEX. FAM. CODE ANN. § 152.102(7) (West 2008).  The child's physical location is the central factor to be considered when determining the home state.  *See Powell*, 165 S.W.3d at 326, 328; *see also In re Brown*, 203 S.W.3d 888, 891–92 (Tex. App.—Fort Worth 2006, orig. proceeding) ("In determining home-state jurisdiction, the Texas Supreme Court has adopted a 'physical presence' test that focuses exclusively on the child's physical location for the six month period preceding the filing of a petition requiring an initial child-custody determination.").

K.H.D. was physically present in Georgia from birth in 2009 until May 25, 2012, when Dawson, his wife, and K.H.D. allegedly moved to Texas.  Although K.H.D. left Georgia with her father on May 25, 2012, Dawson and K.H.D. returned to Georgia in June 2012.  K.H.D. remained in Georgia until July 25, 2012, when Dawson, his wife, their baby, and K.H.D. finally left Georgia, with the remainder of their belongings, and traveled to Texas.  Dawson initiated the Texas child custody proceeding on November 27, 2012.  Based on the foregoing, it is clear that K.H.D. could not have been physically present in Texas for six consecutive months

immediately before the commencement of this child custody dispute on November 27, 2012. *See* TEX. FAM. CODE ANN. § 152.102(7).

In fact, Dawson testified that he, his wife, and K.H.D. returned to Georgia in June before his baby was born. Although Dawson could not remember the exact day in June that they returned to Georgia, Dawson's child was born on June 25, 2012. Dawson, his wife, their baby, and K.H.D. did not leave Georgia after the birth until July 25, 2012. Thus, at the very least, K.H.D. was living in Georgia for an entire month during the six months prior to the initiation of the present action.[6] *Cf. In re Marriage of Marsalis*, 338 S.W.3d 131, 136 (Tex. App.—Texarkana 2011, orig. proceeding) (finding Texas was not children's home state, when, at most, children were in Texas for five months before date of commencement).

Additionally, Dawson's assertions that he and his wife intended to move to Texas with K.H.D. on May 25, 2012 are irrelevant to the determination of K.H.D.'s home state, as is Dawson's own belief that Texas is K.H.D.'s home state.[7] Dawson's state of mind and intentions are not part of the home-state

---

[6]  Additionally, Dawson's discovery responses state that K.H.D. was present in Texas only from May 25, 2012 to May 31, 2012 and June 6, 2012 to June 9, 2012. These responses indicate that K.H.D. spent very minimal time in Texas following the purported "move" and clearly was not physically present in Texas for six consecutive months before the commencement of this proceeding.

[7]  Moreover, even if Dawson started the process of moving in May 2012, this is not sufficient to establish Texas as K.H.D's home state. *See In re Marriage of Marsalis*, 338 S.W.3d 131, 135–36 (Tex. App.—Texarkana 2011, orig.

inquiry. *See Powell*, 165 S.W.3d at 326 ("[T]he Legislature used the word 'lived' 'precisely to avoid complicating the determination of a child's home state with inquiries into the states of mind of the child or the child's adult caretakers.'"); *In re Brown*, 203 S.W.3d at 892 ("[T]he parents' 'subjective intent' as to the child's home state is not relevant . . . ."). Further, whether Dawson established residency in Texas as of May 25, 2012 is of no moment.[8] *See Canales v. Riquelme*, No. 13-09-080-CV, 2010 WL 4657951, at *4 (Tex. App.—Corpus Christi Nov. 18, 2010, orig. proceeding) (mem. op.) (parent's residency does not matter, "it is the physical presence of the children that is determinative"). It is the child's physical location that is the central factor in the home-state analysis, and K.H.D. was not physically present in Texas for six consecutive months immediately before this child custody proceeding began. *See* TEX. FAM. CODE ANN. § 152.102(7); *Powell*, 165 S.W.3d at 326, 328. Texas is not K.H.D.'s home state.

---

proceeding) ("We observe that neither a 'start to move' nor visitations within the State" are sufficient for establishing child's home state).

[8] The fact that Dawson purchased a car and established a bank account in Texas does not factor into determining the home state of K.H.D. either. *See In re Brown*, 203 S.W.3d 888, 892 (Tex. App.—Fort Worth 2006, orig. proceeding) ("[A] 'totality of the circumstances' test that would consider where the parties' vehicles are registered, where they vote, and where they pay their taxes is not applied in deciding the home state of a child.").

**2. Georgia was K.D.H.'s Home State within Six Months of the Commencement of this Proceeding.**

Like Texas, Georgia law provides that Georgia has jurisdiction to make an initial child custody determination if Georgia "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from [Georgia] but a parent or person acting as a parent continues to live in [Georgia]." GA. CODE ANN. § 19-9-61 (2010); *see* TEX. FAM. CODE ANN. § 152.201(a)(1). Georgia was not the home state of K.H.D. on the date of the commencement of the child custody proceeding because K.H.D. had been living in Texas since July 25, 2012. *See* GA. CODE ANN. § 19-9-41(7) (2010) ("'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."); TEX. FAM. CODE ANN. § 152.102(7) (same). Thus, the question is whether Georgia was the home state of K.H.D. within six months before the commencement of the proceeding.

K.H.D. was born on July 12, 2009 in Georgia and lived there the majority of her life. On May 25, 2012, Dawson purportedly "moved" to Texas with K.H.D.; however, within a very short time Dawson and K.H.D. returned to Georgia where they lived at the same residence as they had prior to May 25, 2012. Dawson, with K.H.D., finally left Georgia for Texas on July 25, 2012. Dawson instituted this

proceeding on November 27, 2012. Because K.H.D. did not move from Georgia until July 25, 2012, and July 25, 2012 is within six months of November 27, 2012, Georgia was K.H.D.'s home state within six months of the initiation of this child custody proceeding. *See In re K.Y.*, 273 S.W.3d 703, 707 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[A]s of April 2006, the children had lived in Texas for at least six continuous months, and because April is within six months before the commencement of this proceeding in September 2006, Texas was the children's home state, and the trial court had subject matter jurisdiction."); *In re Burk*, 252 S.W.3d 736, 741 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (because Texas was child's home state until July 27 and July 27 is within six months preceding commencement of proceeding, Texas had home state jurisdiction); *In re Estes*, 153 S.W.3d 591, 598 (Tex. App.—Amarillo 2004, orig. proceeding) (determining whether there was any date during six months preceding date of commencement when children lived in Texas for at least six consecutive months), *overruled in part on other grounds by Powell*, 165 S.W.3d at 327–28.

Furthermore, although K.H.D. was absent from Georgia from May 25, 2012 until June 2012, this does not affect Georgia's home state jurisdiction. "A temporary absence from the state continues to count as though the child lived within the state for purposes of determining the home state." *See In re Marriage of Roman & Gonzalez*, No. 10-06-00023-CV, 2007 WL 1378493, at *4 (Tex. App.—

11

Waco May 9, 2007, orig. proceeding) (mem. op.); *see also In re K.Y.*, 273 S.W.3d at 707 (out of state visits do not create gaps in six month home state jurisdiction time frame); *In re E.A.F.*, No. 11-05-00288-CV, 2008 WL 1893208, at *2 (Tex. App.—Eastland Apr. 24, 2008, no pet.) (mem. op.) (brief absence from state does not alter fact that Texas was child's home state within six months prior to filing of suit). Thus, for purposes of determining home-state status, K.H.D. lived in Georgia from birth until July 25, 2012, when she moved with Dawson to Texas. Because July 25, 2012 is within six months of November 27, 2012, Georgia has home state jurisdiction.[9]

### 3. Georgia Did Not Decline Jurisdiction.

Because Georgia has home state jurisdiction, a Texas court can assert jurisdiction only if "a court of the home state of the child has declined to exercise jurisdiction on the ground that [Texas] is the more appropriate forum under Section 152.207 or 152.208," and the child and at least one of the child's parents has a significant connection to this state and substantial evidence is available in Texas

---

[9] Furthermore, Walker continued to live in Georgia as required under the UCCJEA. *See* GA. CODE ANN. § 19-9-61 (2010); *see also* TEX. FAM. CODE ANN. § 152.201(a)(1) (West 2008) (providing basis for establishing home state jurisdiction in Texas). The UCCJEA also states that the child must be "absent" from the state in which the parent continues to reside. K.H.D. was absent from Georgia from July 25, 2012 until Thanksgiving 2012. This proceeding was commenced on November 27, 2012, a few days after Thanksgiving. We hold that the absence of K.H.D. from Georgia from July 25, 2012 until Thanksgiving 2012 is sufficient to meet the requirements of the UCCJEA. *See* GA. CODE ANN. § 19-9-61; TEX. FAM. CODE ANN. § 152.201(a)(1).

concerning the child's care, protection, training, and personal relationships. *See* TEX. FAM. CODE ANN. § 152.201(a)(2). In his response to Walker's petition for writ of mandamus, Dawson argues that Georgia has declined jurisdiction.[10] The record, however, does not support Dawson's contention.

In support of his assertion that Texas has jurisdiction, Dawson appears to rely on a March 13, 2013 order dismissing the Georgia child custody suit, which had been filed by Walker on January 24, 2013 in Georgia state court. Specifically, the March 13, 2013 order states:

> An order issued by the District Court, 328th Judicial District, Fort Bend County, Texas on January 8, 2013, found that pursuant to the UCCJEA, that said Court has jurisdiction of the case and the parties and that the home state of the child, [K.H.D.] is Texas. The current case was filed on January 24, 2013 well after the Texas Court had issued its order determining that it has jurisdiction and that the home state of the child to be Texas. IT IS THEREFORE ORDERED that the above case be dismissed.

This order is not sufficient to grant Texas jurisdiction.

First, "the operative date for determining whether Texas has jurisdiction is the date the suit was filed in Texas." *See In re McCoy*, 52 S.W.3d 297, 304 (Tex. App.—Corpus Christi 2001, orig. proceeding) (emphasis omitted); *see also In re Alanis*, 350 S.W.3d 322, 325 (Tex. App.—San Antonio 2011, orig. proceeding)

---

[10]     Notably, at the plea to the jurisdiction hearing, Dawson presented no evidence that Georgia had declined jurisdiction. *See In re Hickman*, No. 01-12-00572-CV, 2012 WL 4858070, at *2 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, orig. proceeding) (mem. op.) (petitioner has burden of alleging facts that establish that trial court has jurisdiction under UCCJEA).

(court determines jurisdiction based upon circumstances as they existed on date suit was filed). Thus, we must look at whether the Georgia court had declined to exercise jurisdiction on November 27, 2012, the date this child custody proceeding was commenced in Texas. *See In re McCoy*, 52 S.W.3d at 304 (analyzing jurisdiction under section 152.201(a)(2) as of date suit was filed in Texas). Here, there is no evidence showing that Georgia had declined jurisdiction on or before November 27, 2012 on the ground that Texas was the more appropriate forum. In fact, in would have been impossible for Georgia to have declined jurisdiction at the time this proceeding was filed on November 27, 2012 given that no child custody suit was pending in Georgia at that time.[11] *Cf. Parker v. Dennis*, No. 14-12-00085-CV, 2013 WL 5346417, at *2 (Tex. App.—Houston [14th Dist.] Aug. 27, 2013, no pet.) (mem. op.) (holding Texas trial court had no jurisdiction when there was no case on file in home state in which court could have declined jurisdiction in favor of Texas).

Second, the March 13, 2013 order does not meet the requirements of Texas Family Code section 152.201(a)(2), which are necessary to confer jurisdiction to Texas. Section 152.201(a)(2) states that Texas has jurisdiction only if: "a court of the home state of the child has declined to exercise jurisdiction on the ground that [Texas] is the more appropriate forum under Section 152.207 or 152.208." TEX.

---

[11] Walker did not file her child custody suit in Georgia until January 24, 2013.

FAM. CODE ANN. § 152.201(a)(2). Here, the March 13, 2013 order did not decline jurisdiction because Texas was the more appropriate forum. *See id.* The Georgia court did not find that Georgia was an inconvenient forum or that Walker has engaged in unjustifiable conduct, the grounds on which Georgia had to find that Texas was the more appropriate forum. *See id.* §§ 152.207, 152.208 (West 2008). Instead, the Georgia court dismissed Walker's case because the trial court in Texas had erroneously found it had jurisdiction and was K.D.H.'s home state. An order declining jurisdiction based on another state's erroneous assertion of jurisdiction does not satisfy the requirements set out in section 152.201(a)(2), which are necessary for Texas to acquire jurisdiction. *See id.* § 152.201(a)(2). Because Georgia did not decline to exercise jurisdiction on the ground that Texas is the more appropriate forum under Family Code section 152.207 or 152.208, the Texas trial court is without jurisdiction. *See id.*

In his response to Walker's petition for writ of mandamus, Dawson also appears to rely on Family Code section 152.201(a)(4) as a basis for the trial court's jurisdiction. However, Texas does not acquire jurisdiction under section 152.201(a)(4), unless "no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3)." *Id.* § 152.201(a)(4). As discussed previously, Georgia has jurisdiction under subdivision (1) because Georgia was K.H.D's home state within six months before the commencement of the child

custody proceeding; thus, Dawson cannot rely on section 152.201(a)(4) as a basis for jurisdiction. *See id.* § 152.201(a)(1).

Georgia has not declined jurisdiction in this case; thus, Texas is without jurisdiction as the more appropriate forum or as the only state in which a suit for determination of child custody could be filed. Georgia was an appropriate forum when Walker's suit was filed on January 24, 2013 and Texas was not.

### 4. Attorney's Fees, Costs, and Expenses.

In a separate issue, Walker asks this Court to award her expenses and attorney's fees pursuant to Family Code section 152.312, or in the alternative, to remand this case to the trial court for such an award. We decline to do either. Walker has failed to establish her entitlement to the relief requested or the applicability of section 152.312 to the present case. *See id.* § 152.312(a) (West 2008) (awarding necessary and reasonable expenses to prevailing party in enforcement proceeding); *see also In re Kamstra*, No. 12-09-00017-CV, 2010 WL 708857, at *9 (Tex. App.—Tyler Mar. 2, 2010, orig. proceeding) (mem. op.) (denying relator's request for attorney's fees). We deny Walker's petition to the extent it requests an award of attorney's fees, costs, and expenses.[12]

---

[12] In her petition, Walker also raises three additional issues. We find that Walker's second issue, "whether Dawson had authority to file this custody suit in Texas," is subsumed into the jurisdictional question addressed by this Court above. Walker's third issue relates to temporary relief requested, which has previously been addressed by this Court in separate orders. Finally, in her fourth issue, Walker

16

## Conclusion

We conclude that the trial court erred in asserting jurisdiction over this child custody proceeding and in denying Walker's plea to the jurisdiction. Accordingly, we conditionally grant relator's petition for writ of mandamus and direct the trial court to (1) dismiss the action filed by Dawson seeking an initial child custody determination and (2) vacate all orders entered in this matter. We deny relator's petition for writ of mandamus as to Walker's request for an order awarding her attorney's fees, costs, and expenses. We are confident the trial court will comply, and our writ will issue only if the trial court does not. We lift the stay entered on November 12, 2013.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.

---

complains, in the alternative, to the jurisdictional issue, that the trial court improperly granted her counsel's motion to withdraw. Because Walker's first issue regarding jurisdiction is dispositive, we do not reach this final issue. *See* TEX. R. APP. P. 47.1.