**Opinion issued May 16, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00903-CV

————————————

## IN RE DAVID TIMOTHY BUTTERFIELD, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

Relator, David Timothy Butterfield, has filed a petition for a writ of mandamus challenging the trial court's order denying his plea to the jurisdiction and request for the court to decline jurisdiction in a suit affecting the parent-child

relationship.[1]  In two issues, Butterfield contends that the trial court lacks jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[2]

We conditionally grant the petition.

## Background

Butterfield and real party in interest, Jacqueline Torres, are the parents of a daughter, E.B., who was born in Colorado in March 2017.  In January 2018, Torres and E.B. moved to Texas.  On June 8, 2018, Butterfield, who continues to reside in Colorado, filed a Petition for Allocation of Parental Responsibilities in Pueblo County, Colorado, seeking "allocation of parental responsibilities, the establishment of child support, and any other orders necessary to effectuate the best interests of [E.B.]."  On June 15, 2018, Torres filed a Petition to Adjudicate Parentage in district court in Brazoria County, Texas, seeking "to establish the parent-child relationship between [Butterfield]" and E.B. and orders for conservatorship, visitation, and support.

Butterfield responded in the Texas proceeding by filing his Special Appearance, Plea to the Jurisdiction, Request for Court to Decline Jurisdiction, and Original Answer.  In part, he asked the court to dismiss Torres's petition because the court lacked subject-matter jurisdiction or, if the court concluded that it had

---

[1]   The underlying case is *In the Interest of E.E.B., a Child*, No. 97319-F, in the 300th District Court of Brazoria County, the Honorable J. Randall Hufstetler presiding.

[2]   *See* TEX. FAM. CODE ANN. §§ 152.001–.317.

jurisdiction, decline jurisdiction or stay the proceedings. Butterfield argued that the Texas court lacked jurisdiction because, under the UCCJEA, Texas was not E.B.'s home state and Colorado was her home state.[3] He attached to his pleading an Affidavit for UCCJEA Information in which he testified that E.B. had lived in Colorado with Torres and Butterfield from "March 9, 2017 – January 19, 2018" and had lived in Texas with Torres from "January 19, 2018 – Present."[4] He further testified that he had "filed a Petition for Allocation of Parental Responsibilities in Pueblo County, Colorado, on June 8th, 2018" and Torres "was personally served with a Summons for Allocation of Parental Responsibilities on June 26, 2018." (Emphasis omitted.) Butterfield also filed a separate Affidavit in Support of Special Appearance and Plea to Jurisdiction. In that affidavit, he testified:

> I presently live in Pueblo County, Colorado, and have lived in Colorado since 1986. [Torres] resided with me in Colorado until January 19, 2018.

> [E.B.] was born in Colorado on March 9, 2017. [She] lived in Colorado with [Torres] and me from her birth until January 19, 2018, when [Torres] unexpectedly moved out of Colorado, to Texas, with [E.B.], without notifying me that she was moving and without any consent or agreement by me to move to Texas. . . .

> I filed a **Petition for Allocation of Parental Responsibilities** in Pueblo County, Colorado, on June 8th, 2018. [Torres] was personally served with a Summons for Allocation of Parental Responsibilities on June 26th, 2018.

---

3    *See id.* § 152.201(a).

4    *See id.* § 152.209(a).

3

[Torres] filed a Petition to Adjudicate Parentage in Brazoria County (this case) on June 15, 2018, and I was served on June 28, 2018.

Texas is not [E.B.'s] home state. [She] resided in Colorado for the first 10 months of her life. It has only been 5 months since [Torres] unexpectedly moved out of Colorado, to Texas, with [E.B.]. Therefore, Texas is not the home state of [E.B.] and does not have jurisdiction to make orders regarding [E.B.] Colorado is [E.B.'s] home state.

Torres filed, in the Texas proceeding, her Affidavit for UCCJEA Information. She testified that her and E.B.'s present address was in Texas; E.B. had lived in Colorado with Torres and Butterfield between "03/09/2017 – 01/08/2018," and with Torres between "01/08/2018 – 1/20/2018"; and she and E.B. had lived in Texas at one address between "01/21/2018 – 04/06/2018" and at a second address between 04/06/2018 – present." Torres further testified the she had "recently been served on a parentage action in Colorado to which [she was] challenging jurisdiction."

The Texas court scheduled a hearing on temporary orders and Butterfield's plea to the jurisdiction for July 2, 2018. A docket sheet entry reflects that the hearing was "reset pending [the] outcome of [a] jurisdictional matter." A second docket sheet entry reflects that a "phone call with [the] Colorado court on [the] issue of jurisdiction" was "scheduled by [the] Colorado Court" for 2:00 p.m. on August 8, 2018. A record was not made "as conference did not take place. [The] Colorado court declined to participate in the call to resolve jurisdiction" and the Texas court "assumed subject[-]matter jurisdiction to proceed with [the] matter." On August 10, 2018, the Texas court signed an order denying Butterfield's Special Appearance,

4

Plea to the Jurisdiction, and Request for Court to Decline Jurisdiction, stating that the Colorado court "declined to participate in the scheduled telephone conference" and, "[a]s such and [i]n accordance with the Texas Family Code," finding that "Texas has jurisdiction."

On August 29, 2018, the Colorado court signed an order denying Torres's motion to dismiss the proceeding in that court and setting out that court's findings. In part, the Colorado court found that Torres "conced[ed] in her Motion to Dismiss that she [had] filed an action for allocation of parental responsibilities or the Texas statutory equivalent before July 21, 2018, which would have been the date on which [E.B] would have resided in the State of Texas for 182 days"; Colorado "was the home state of [E.B.]" on June 8, 2018, the date of the commencement of the Colorado proceeding; and Texas "was not the home state of [E.B.] at the commencement of the proceeding in [Texas] as [she] had not resided in the State of Texas for at least 182 days before commencement of that proceeding." The court found, therefore, that "jurisdiction for the determination of allocation of parental responsibilities/custody of [E.B.] is properly determined" in the action pending in Colorado, Texas "does not have jurisdiction," and the Colorado court "[had] not declined to exercise jurisdiction." The order also included findings regarding the Colorado court's "attempt[s] to confer with the Texas Court":

1. "This Court's first call to the State of Texas was placed directly to [the Texas court] . . . on July 2, 2018. This call was in response

5

to a call from [the Texas court] placed to the Family Court Facilitator in [the Colorado court] on July 2, 2018. A voice mail was left on the Family Court Facilitator's telephone asking that [the Colorado court] call [the Texas court] to confer."

2. "On July 2, 2018, [the Colorado court] returned the call directly to [the Texas court]. The call was not answered and a voice mail message was left for a return call. No return call was ever received from [the Texas court]."

3. "At [a] setting held on July 31, 2018, [the Colorado court] noted that a conference call with the Texas Court would be scheduled."

4. "The Division Clerk [arranged] for the telephone conference to take place on August 8, 2018, between [the Texas court] and [the Colorado court]. . . . On August 3, 2018, the Division Clerk received a call directly from [the Texas court] and scheduled the conference call to take place on August 8, 2018, at 1:00 p.m. Colorado time. It was confirmed that [the Colorado court] would call the Texas [c]ourt at [its telephone number]."

5. "On August 8, 2018, [the Colorado court] attempted two phone calls to the [telephone] number and received voice mail on both occasions. The practice of [the Colorado court] is that these calls are conducted on the record. Therefore, this Court placed the phone calls from [the Colorado court's] Courtroom."

6. "It was later learned from a call log history . . . that [the Texas court] was attempting to place a call to the Division Clerk at her desk phone at 1:03 p.m. and 1:14 p.m. The Division Clerk was unavailable as she and this judicial officer were in the Courtroom attempting to call [the Texas court] per the prior arrangements."

7. "[The Texas court] later that day called the Family Court Facilitator in [the Colorado court]. By the time that call was placed, [the Colorado court] was in another hearing and not available to take the call. Based on the Family Court's Facilitator's conversation with [the Texas court], the Family Court Facilitator informed the Division Clerk that we had in fact attempted to call the correct telephone number and that [the Texas court] would be out of the office the following week so it would be a couple of weeks before [the Texas court] could reschedule anything."

6

8. "Upon subsequent attempt by the Division Clerk to reschedule the telephone conference beginning August 20, 2018, the week [the Texas court] was again to be available, [the Colorado court] was informed that the Texas [c]ourt had decided that he was keeping jurisdiction. [The Colorado court] . . . subsequently learned that on the very day of the attempted conference call, [the Texas court] entered an Order in the Texas action stating that [the Colorado court] 'declined to participate in the scheduled telephone conference.'"

9. "This finding by the Texas [c]ourt is directly contrary to the facts . . . ."

10. "Upon learning of the entry of the Texas Order by counsel for [Butterfield] filing a copy of that Order in this case, [the Colorado court] has on two occasions attempted to contact [the Texas court] directly and received only voice mail. Further [the Colorado court] has engaged in e-mail correspondence with the [the Texas court's] Clerk who stated to [the Colorado court] that she would forward [the Colorado court's] message onto [the Texas court]. No return calls or e-mails have been received from [the Texas court] attempting to resolve this issue in accordance with the provisions of the [UCCJEA]. Therefore, [the Colorado court] finds that the Texas Court has declined to make sufficient attempt to appropriately communicate with [the Colorado court] pursuant to the requirements of the [UCCJEA]."

11. "The State of Colorado is not an inconvenient forum for determination of the custodial issues. [E.B.] has spent more of her life in the State of Colorado than in the State of Texas. [E.B.] and [Butterfield] have a significant connection with the State of Colorado, and there is substantial evidence available in the State of Colorado concerning [E.B.'s] care, protection, training and personal relationships."

Butterfield filed the Colorado court order in the Texas court proceeding.

In the Texas court proceeding, Butterfield also filed a motion to reconsider the court's August 10, 2018 order. At the hearing on his motion, Butterfield asserted that the "Texas Family Code is . . . very specific and requires that Texas was the

7

home state of the child or that the home state of the child has declined jurisdiction." And, the Texas court addressed its attempts to confer with the Colorado court. According to the court, a hearing was set for July 2, 2018 on temporary orders and Butterfield's plea to the jurisdiction. That day, the court "placed a call" to the Colorado court, did not "receive an answer," and "reset the hearing on Temporary Orders . . . pending the outcome of the jurisdictional matter." The Texas court then communicated with "an administrator for the [Colorado] court . . . and scheduled a telephone conference with their magistrate" for "the time that they selected," which was "2:00 o'clock [Texas] time" on August 8, 2018. The Texas court "made that phone call"; "got no response"; "made another phone call"; and "got a response from someone who was not the coordinator for that magistrate, who then connected [the court] to the coordinator for the magistrate in the [Colorado court]." According to the Texas court, "the administrator for [the Colorado] court" said that "the magistrate was in a hearing and was unavailable." The Texas court explained:

> I said [to the administrator] I scheduled this telephone conference specifically for this time and [the Colorado court] picked the time and the date and I'm here on the record or ready to be on the record with counsel. So, I will give you a few minutes to get your magistrate off the bench, so that we can have this telephone conference.
>
> [The administrator] said [the magistrate] was not going to be available. So, they chose not to participate and did not. That ended the telephone conference on August the 8th, 2018.
>
> I was never able to visit with the magistrate in Colorado; and subsequent to that, I declined to continue trying to communicate with someone who doesn't want to communicate and reviewed the Special

8

Appearance, denied the Special Appearance and the Plea to the Jurisdiction, and assumed jurisdiction based upon all of the affidavits that have been presented and the various motions to that time.

There's nothing in the Family Code, the UCCJEA that instructs this Court, nor is there a case that is instructive, on how to deal with the jurisdiction that doesn't want to participate. . . . And therefore, I, in making the phone call, made the effort and denied the Special Appearance and Plea to the Jurisdiction . . . .

The Texas court further explained that the August 8, 2018 call "was scheduled as a telephone conference" between the Texas court and the Colorado court, pursuant to the UCCJEA, "to determine would the [Colorado court] assume or decline jurisdiction and would [the Texas court] assume or decline jurisdiction." The Colorado court "failed and refused to participate." The Texas court, therefore, decided not to "giv[e] up jurisdiction," and "based upon the findings and the affidavits that were presented, would . . . assum[e] jurisdiction." The court then signed its order on August 10, 2018. The hearing record reflects that the Texas court reviewed the Colorado court's August 29, 2018 order. However, it had "no force and effect" and was "late" because signed after the Texas court had "already assumed jurisdiction." The Texas court denied Butterfield's motion to reconsider.

**Standard of Review**

Mandamus relief is available to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148

9

S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when its action is so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *See In re Cerberus Capital Mgmt.*, *L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or in applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *See In re Walker*, 428 S.W.3d 212, 215–216 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *In re Burk*, 252 S.W.3d 736, 739 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *see also In re D.S.*, 555 S.W.3d 301, 311 (Tex. App.—Dallas 2006, orig. proceeding) ("The UCCJEA is a subject-matter jurisdiction statute."). Mandamus relief is an appropriate means to require a trial court to comply with the UCCJEA's jurisdictional requirements. *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005); *In re Walker*, 428 S.W.3d at 215. "[I]n jurisdictional disputes arising from child custody proceedings, the relator need not demonstrate the inadequacy of an appellate remedy." *In re Salminen*, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (internal quotations omitted).

## Jurisdiction

In his first and second issues, Butterfield argues that the Texas court erred in assuming jurisdiction in this matter because Texas was not E.B.'s home state,

10

Colorado had been her home state during the six months before the filing of the Texas proceeding, and another proceeding was pending in Colorado.[5]

The UCCJEA provides the exclusive basis for a Texas court to exercise jurisdiction over a child-custody determination. *See* TEX. FAM. CODE ANN. § 152.201(b); *In re Dean*, 393 S.W.3d 741, 746 (Tex. 2012) (orig. proceeding). A Texas court has subject-matter jurisdiction to make an initial child-custody determination only if:

> (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:
>
>> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

---

[5] Butterfield also asserts that the Texas court could not have assumed jurisdiction under section 152.206(a) of the Family Code. Section 152.206(a) addresses simultaneous proceedings in which a Texas court has jurisdiction under the UCCJEA and a proceeding is pending "in a court of another state having jurisdiction substantially in conformity with the [UCCJEA]." TEX. FAM. CODE ANN. § 152.206(a); *see In re McCoy*, 52 S.W.3d 297, 305 (Tex. App.—Corpus Christi–Edinburg 2001, orig. proceeding); *In re J.P.L.*, 359 S.W.3d 695, 710 (Tex. App.—San Antonio 2011, pet. denied); *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 318 (Tex. App.—Dallas 2008, no pet.). Here, the Texas court did not have jurisdiction under the UCCJEA. Further, section 152.206(a) does not confer jurisdiction over a proceeding. *See In re McCoy*, 52 S.W.3d at 305.

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX. FAM. CODE ANN. § 152.201(a); *see id.* §§ 152.207 (addressing inconvenient forum), 152.208 (addressing declining jurisdiction because "person seeking to invoke [court's] jurisdiction has engaged in unjustifiable conduct"). A child's "[h]ome state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7) (internal quotations omitted). A "[c]hild custody proceeding" is "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." *Id.* § 152.102(4) (internal quotations omitted). A proceeding commences on the filing of the first pleading. *Id.* § 152.102(5). Unless a Texas court has jurisdiction under one of the four grounds enumerated in section 152.201, the court cannot exercise jurisdiction over a child custody determination. *See id.* § 152.201(b).

Torres, as the petitioner in the Texas court, had the burden to allege facts establishing the Texas court's subject-matter jurisdiction. *See In re S.A.H.*, 465 S.W.3d 662, 666 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Barajas v.*

12

*Santiago*, No. 01-10-00914-CV, 2012 WL 760921, at *3 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, no pet.) (mem. op.). In her petition, Torres pleaded that E.B. resided in Texas and "[n]o court had continuing jurisdiction" of E.B. and there were "no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting [E.B.]." In this Court, Torres does not dispute that Colorado was E.B.'s home state at the time she filed her petition in the Texas court.

"[T]he operative date for determining whether Texas has jurisdiction is the date the suit was filed in Texas." *In re Walker,* 428 S.W.3d at 219 (internal quotations omitted). Torres filed her petition in the Texas court on June 15, 2018. The parties' affidavit testimony shows that E.B. was born in Colorado on March 9, 2017; lived in Colorado until January 19 or 20, 2018; and lived in Texas beginning January 21, 2018. As of June 15, 2018, E.B. had lived in Texas for approximately five months and had not lived in Texas for six consecutive months before Torres filed her petition. Texas, therefore, was not E.B.'s home state. *See* TEX. FAM. CODE Ann. § 152.201(a)(1); *see also In re Walker*, 428 S.W.3d at 217 (concluding Texas was not child's home state because child not physically present in Texas for six consecutive months immediately before initiation of child custody proceeding); *In re Salminen*, 492 S.W.3d at 40 (concluding Texas was not child's home state when

13

child had not lived in Texas for six-month period immediately preceding filing of Texas child custody proceeding).

Colorado was E.B.'s home state if Colorado was her "home state within one hundred eighty-two days before the commencement of the proceeding" and she "was absent from [Colorado] but a parent or person acting as a parent continued to live in [Colorado]." COLO. REV. STAT. ANN. § 14-13-201(1)(a); *see generally* TEX. FAM. CODE ANN. § 152.201(a)(1). In his affidavits, Butterfield testified that, when he filed his petition in the Colorado court on June 8, 2018, he lived in Colorado. E.B. did not live in Colorado on that date but had lived in Colorado from her birth on March 17, 2017 until January 19 or 20, 2018. Because Colorado was E.B.'s home state within 182 days of the start of the Colorado proceeding, she did not live in Colorado on that date but Butterfield lived in Colorado, Colorado was E.B.'s home state. *See* COLO. REV. STAT. ANN. § 14-13-201(1)(a); *see generally In re Walker*, 428 S.W.3d at 218 (concluding Georgia was child's home state within six months before commencement of child custody proceeding); *In re Burk*, 252 S.W.3d at 741 (concluding Texas was child's home state within six months before commencement of child custody proceeding).

Recognizing that Colorado was E.B.'s home state, Torres asserts that the Texas court properly exercised jurisdiction under section 152.201(a)(2) of the Texas Family Code. Section 152.201(a)(2) provides that a Texas court may exercise

jurisdiction if "a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207" and:

> (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>
> (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships[.]

TEX. FAM. CODE ANN. § 152.201(a)(2). In determining whether to decline jurisdiction, a court may communicate with a court in another state. *See In re Milton*, 420 S.W.3d 245, 273 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (citing TEX. FAM. CODE ANN. § 152.110(b)).

Torres argues that jurisdiction was proper under section 152.201(a)(2) because the Colorado court "implicitly declined to exercise jurisdiction because of its inability or unwillingness to call the [Texas] court as scheduled or its unwillingness to take the call of [that] court" and the Texas court "inferred that the Colorado court had implicitly declined to exercise jurisdiction" as of August 8, 2018. Torres relies on *In re T.B.*, 497 S.W.3d 640 (Tex. App.—Fort Worth 2016, pet. denied), to support her argument that a Texas court "may infer an 'implied determination' that the court of another state has declined to exercise home state jurisdiction."

15

In *In re T.B.*, the mother filed, in Texas, a suit affecting the parent-child relationship seeking to modify a Florida court order concerning conservatorship and visitation. The father moved to dismiss the Texas proceeding for lack of jurisdiction under the UCCJEA and filed, in the Florida court, a motion asking that court to confirm its jurisdiction and enforce its order. 497 S.W.3d at 644. When the Florida court did not rule on the father's motion or respond to the Texas court's attempts to communicate with the court, the Texas court heard the mother's motion to modify and signed a final judgment modifying the Florida court's order. *Id.* On appeal, the father argued that the Texas court lacked subject-matter jurisdiction because the Florida court had not declined to exercise its home-state jurisdiction. *Id.* at 649–50. The court of appeals explained, "[u]nder the unique facts presented [in that case]":

> the Florida court's failure to communicate with the trial court for over six months and the Florida court's failure to rule on [f]ather's motion filed with it—for over six months before the trial court proceeded to a final hearing, for over eight months before the trial court signed a final judgment, and for over fourteen months to date—constitute[d] an implied determination by the Florida court to decline to exercise its home-state jurisdiction and an implied determination by the Florida court that Texas is a more convenient forum for litigation of [m]other's modification SAPCR.

*Id.* at 651. The court held, "under the narrow facts presented," that the Texas court had subject-matter jurisdiction to modify the Florida court's order. *Id.*

The decision in *In re T.B.* does not support a conclusion that the Texas court properly assumed jurisdiction over Torres's proceeding. Here, the Texas court and

16

the Colorado court attempted to, but did not, communicate about the pending proceedings and the Texas court "assumed jurisdiction to proceed with [the] matter." And, approximately two and one-half months after Torres filed her Texas court petition and one month after she filed her motion to dismiss the Colorado proceeding, the Colorado court denied the motion, stating that the court "ha[d] not declined to exercise jurisdiction." Any failure of the Colorado court to communicate with the Texas court did not provide any basis on which the Texas court may have exercised jurisdiction over Torres's proceeding. Because Colorado was E.B.'s home state and the Colorado court did not decline jurisdiction, the Texas court could not exercise jurisdiction under section 152.201(a)(2). *See* TEX. FAM. CODE ANN. § 152.201(a)(2); *In re Dean*, 393 S.W.3d at 747 (explaining Texas court should not have assumed jurisdiction when New Mexico court had not yet declined jurisdiction under UCCJEA); *In re S.A.H.*, 465 S.W.3d at 667 (concluding Texas court did not have jurisdiction when home-state court did not decline jurisdiction); *see also In re Milton*, 420 S.W.3d at 275 (explaining when Utah court had not declined jurisdiction and Texas court did not have subject-matter jurisdiction over proceeding "any communication with the Utah court could not have established jurisdiction").[6]

---

[6] Because we conclude that the Colorado court did not decline jurisdiction, we need not address Torres's arguments that Texas is a more appropriate forum, she and E.B have significant connections with Texas, and substantial evidence is available in Texas. *See* TEX. R. APP. P. 47.1; *see generally* TEX. FAM. CODE ANN. § 152.201(a)(2).

17

We sustain Butterfield's first and second issues.

## Conclusion

We conclude that the Texas court did not have jurisdiction under Texas Family Code section 152.201 and the trial court erred in assuming jurisdiction in this matter and denying Butterfield's plea to the jurisdiction. We conditionally grant the petition for writ of mandamus and direct the trial court to dismiss the proceeding filed by Torres. The writ will issue only if the trial court does not comply. Finally, we vacate our November 8, 2018 order staying the trial court proceedings.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.